# United States Court of Appeals
## For the First Circuit

---

### No. 25-1638

ÍNARU NADIA DE LA FUENTE DÍAZ; MARU ROSA HERNÁNDEZ; ANDRÉ RODIL; YEIVY VÉLEZ BARTOLOMEI; GÉ CASTRO CRUZ; DENI JUSTE,

Plaintiffs – Appellees,

v.

JENNIFFER A. GONZÁLEZ COLÓN, in the official capacity as Governor of the Commonwealth of Puerto Rico; Dr. VÍCTOR RAMOS OTERO, in his official capacity as Secretary of the Department of Health of the Commonwealth; WANDA LLOVET DÍAZ, in the official capacity as the Director of the Division of Demographic Registry and Vital Statistics of the Commonwealth,

Defendants – Appellants,

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon.  María Antongiorgi-Jordán, U.S. District Judge]

---

### BRIEF FOR DEFENDANTS-APPELLANTS JENNIFFER A. GONZÁLEZ COLÓN, DR. VICTOR RAMOS OTERO AND WANDA LLOVET DÍAZ

**OMAR ANDINO-FIGUEROA**
Solicitor General of Puerto Rico
USCA No. 1197240
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Telephone: (787) 721-2900
E-mail: *omar.andino@justicia.pr.gov*

**FRANK A. ROSADO MÉNDEZ**
Deputy Solicitor General
USCA No. 1209179
PO Box 9020192
San Juan, Puerto Rico 00902-0192
Telephone: (787) 721-2900
Email: *frank.rosado@justicia.pr.gov*

September 10, 2025

# TABLE OF CONTENTS

Page (s)

I.      PRELIMINARY STATEMENT ................................................................ 2-5

II.     JURISDICTIONAL STATEMENT ............................................................6

III.    STATEMENT OF ISSUES ........................................................................6

    1.    Whether Puerto Rico's birth certificate format creates a classification against nonbinary individuals.

    2.    Whether Puerto Rico's birth certificate format survives rational scrutiny in this context under U.S. v. Skrmetti, 605 U.S. ___, 145 S.Ct. 1816 (2025).

    3.    Whether there is a constitutional right to include a sex marker other than male or female on a government-issued birth certificate.

    4.    Whether the district court's application of rational basis review impermissibly extended judicial authority, in violation of separation of powers principles

IV.     STATEMENT OF THE CASE ................................................................ 6-10

V.      SUMMARY OF THE ARGUMENT ..................................................... 11-14

VI.     STANDARD OF REVIEW .......................................................................... 15

VII.    ARGUMENT .......................................................................... 15-45

  A.  The Puerto Rico birth certificate format does not create a classification against individuals that identify as nonbinary ......................................... 15-18

  B.  Appellees' equal protection rights claims fail because, analyzed through the Equal Protection Clause framework, the Puerto Rico birth certificate format survives rational review ................................................................ 18-31

  C.  The district court's reasoning has already been called into question by the Supreme Court ........................................................................ 32-37

  D.  The Puerto Rico birth certificate format does not implicate Appellees' constitutional rights ................................................................... 37-40

ii

E. In so stringently applying the standard of rational review to Puerto Rico's birth certificate format, the district court exceeds the scope of judicial review and infringes upon the Government's sovereign authority ............ 40-45

VIII. CONCLUSION AND RELIEF SOUGHT ...................................................46

CERTIFICATE OF FILING AND SERVICE ....................................................... 47

CERTIFICATE OF COMPLIANCE WITH RULE 32(G) ...................................48

# TABLE OF AUTHORITIES

Page (s)

**Cases:**

Armour v. City of Indianapolis, Ind., 566 U.S. 673 (2012)............................. 24, 25

Arroyo-González v. Rosselló-Nevares, 305 F.Supp.3d 327 (D.P.R. 2018) ... *passim*

Association to Preserve and Protect Local Livelihoods v. Sidman,
  147 F.4th 55 (1st Cir. 2025)....................................................21

Bostock v. Clayton County, 590 U.S. 644 (2020) ....................................32

Canna Provisions, Inc. v. Bondi, 138 F.4th 602 (1st Cir. 2025) ............................37

City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985).....................20

Cohen v. Brown Univer., 101 F.3d 155 (1st Cir. 1996) ..........................................19

Cook v. Gates, 528 F.3d 42 (1st Cir. 2008)................................................................19

Corbitt v. Secretary of the Alabama Law Enforcement Agency,
  115 F.4th 1335 (11th Cir. 2024) ...................................................... 26, 38

Dandridge v. Williams, 397 U.S. 471 (1970)..........................................................14

Dist. 4 Lodge of the Int'l Ass'n of Machinists and Aerospace Workers Local
  Lodge 207 v. Raimondo, 18 F.4th 38 (1st Cir. 2021) ..........................................28

Dobbs v. Jackson Women's Health Organization,
  597 U.S. 215 (2022)................................................... ……………...14, 40, 43, 44

El-Shifa Pharm. Indus. Co. v. U.S., 607 F.3d 836, 840 (D.C. Cir. 2010) ..............41

FCC v. Beach Commc'ns Inc., 508 U.S. 307 (1993).................................. 20, 21, 24

Ferguson v. Skrupa, 372 U.S. 726 (1963) ...............................................................14

Fowler v. Stitt, 104 F.4th 770 (10th Cir. 2024) .............................................. *passim*

iv

Freeman v. Town of Hudson, 714 F.3d 29 (1st Cir. 2013)......................................16

González-Droz v. González-Colón, 660 F.3d 1 (1st Cir. 2011)............................21

Gore v. Lee, 107 F.4th 548 (6th Cir. 2024) ................................................. 19, 26, 38

Gratz v. Bollinger, 539 U.S. 244 (2003)...................................................................18

Hartin v. Dir. Of Bureau of Recs. & Stat., 347 N.Y.S. 2d 515
   (N.Y. Sup. Ct. 1973)........................................................................................26

Heller v. Doe by Doe, 509 U.S. 312 (1993) ........................................................ 11, 21

Hilton v. City of Wheeling, 209 F.3d 1005 (7th Cir. 2000)  ..................................29

Hope v. Comm'r of Ind. Dep't of Corr., 66 F.4th 647 (7th Cir. 2023) ............ 24, 36

Japan Whaling Ass'n v. Am. Cetacean Soc., 478 U.S. 221 (1986).........................41

Kasper v. School Board of St. Johns County, 57 F.4th 791 (11th Cir. 2022) .........24

Kittery Motorcycle, Inc. v. Rowe, 320 F.3d 42 (1st Cir. 2003) ..............................19

Klimik v. Kent Cty. Sheriff's Dep't, 91 Fed.Appx. 396, 400 (6th Cir. 2004)..........21

MacRae v. Matos, 106 F.4th 122 (1st Cir. 2024) .....................................................15

Marbury v. Madison, 5 U.S. 177 (1803).................................................... 40, 41, 42

Maryland v. King, 567 U.S. 1301 (2012) .................................................................28

Moore v. City of East Cleveland, Ohio, 431 U.S. 494 (1977).................................37

Mulero-Carrillo v. Román Hernández, 790 F.3d 99 (1st Cir. 2015) ......................21

Nicholas v. Mason, 2023 WL 10668991 *1, *10 (D.N.H. Dec. 28, 2023).............36

Olympic Arms v. Magaw, 91 F.Supp.2d 1061 (E.D. Mich. 2000) ................... 16-17

Raidoo v. Moylan, 75 F.4th 1115 (9th Cir. 2023) ....................................................41

Roe v. Wade, 410 U.S. 113 (1973) .........................................................................44

Segrets, Inc. v. Gillman Knitwear Co., Inc., 207 F.3d 56 (1st Cir. 2000)..............15

Stitt v. Fowler, Docket No. 24-801, ___ S. Ct.___ (2025),
   2025 WL 1787695 ................................................................................. *passim*

Students for a Fair Admissions, Inc. v. President and Fellows of
   Harvard College, 600 U.S. 181 (2023)................................................................18

Trump v. CASA, Inc., 606 U.S. ___, 145 S.Ct. 2540 (2025)..................................28

Tuan Anh Nguyen v. INS, 533 U.S. 53 (2001) .......................................................24

U.S. v. Skrmetti, 605 U.S. ___, 145 S. Ct. 1816 (2025).................................. *passim*

U.S. v. Virginia, 518 U.S. 515 (1996) ....................................................................19

Vlandis v. Kline, 412 U.S. 441, 459 (1973) ...........................................................25

Washington v. Davis, 426 U.S. 229 (1976) .............................................................16

**Statutes (Federal):**

28 U.S.C. § 1291 ......................................................................................................6

42 U.S.C. § 1983 ................................................................................................ *passim*

**Statutes (State):**

Puerto Rico Civil Code, Article 694, P.R. Laws Ann. tit. 31, § 7655.............. 31, 43

PR LEGIS 55 (2020), 2020 Laws of Puerto Rico Act 55 (H.B. 1654) ...................31

**Constitutional Provisions:**

Equal Protection and Due Process Clauses of the Fourteenth Amendment ........... 32

**Other Sources:**

Department of Health & Human Services, Defining Sex: Guidance Federal
Agencies, External Partners, and the Public Implementing Executive Order
14158, Defending Women From Gender Ideology Extremism and Restoring
Biological Truth to the Federal Government,
https://womenshealth.gov/sites/default/files/_images/2025/2.19.25%20Defining
%20Sex%20Guidance%20for%20Federal%20Agencies%2C%20External%20Pa
rtners%2C%20and%20the%20Public%20FINAL.pdf (last visit September 8,
2025)……………………………………………………………………………….23

# United States Court of Appeals
## For the First Circuit
_____

### No. 25-1638

ÍNARU NADIA DE LA FUENTE DÍAZ; MARU ROSA HERNÁNDEZ; ANDRÉ RODIL; YEIVY VÉLEZ BARTOLOMEI; GÉ CASTRO CRUZ; DENI JUSTE,

Plaintiffs – Appellees,

v.

JENNIFFER A. GONZÁLEZ COLÓN, in the official capacity as Governor of the Commonwealth of Puerto Rico; Dr. VÍCTOR RAMOS OTERO, in his official capacity as Secretary of the Department of Health of the Commonwealth; WANDA LLOVET DÍAZ, in the official capacity as the Director of the Division of Demographic Registry and Vital Statistics of the Commonwealth,

Defendants – Appellants,

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. María Antongiorgi-Jordán, U.S. District Judge]
_____

### BRIEF FOR DEFENDANTS-APPELLANTS
_____

**TO THE HONORABLE COURT:**

**COME NOW** Defendants-Appellants, Jenniffer A. González-Colón, in her official capacity as Governor of Puerto Rico; Dr. Victor Ramos-Otero, in his official capacity as Secretary of the Department of Health of Puerto Rico; and Wanda Llovet-Díaz, in her official capacity as the Director of the Division of Demographic

Registry and Vital Statistics of Puerto Rico ("Appellants"), through the undersigned counsel, and most respectfully state and pray as follows:

## I.     PRELIMINARY STATEMENT

Puerto Rico, like other states and territories, has established a legal framework governing the issuance of birth certificates. At birth, the government records each individual's sex as either male or female. It also permits individuals to change — subject to certain requirements, including a medical certification— that designation between those two sex markers. In this way, Puerto Rico's law treats all individuals equally in recording the historical fact of one's sex at birth, while still affording every citizen the opportunity for modifications within that existing framework. Nevertheless, the district court ordered the Government to revise its current administrative practices within the Demographic Registry —a division of the Puerto Rico Department of Health— to recognize a third sex marker ("X"), because certain individuals subjectively believe that neither male nor female sex designation accurately represents their nonbinary identity.[1]

A rule that applies equally to all should not be judicially disturbed unless it violates the Constitution, which is evidently not the case here. To wit, there is no reasonable way to conclude that a right to include an "X" sex marker is deeply rooted

---

[1] Had it not been for this Court's prompt intervention in granting our emergency petition for stay of proceedings, compliance with said order would have been due on July 31, 2025.

in this Nation's history and tradition. First and foremost, Appellees[2] have not put forth a right that has presumably been infringed by the enforcement of the Puerto Rico birth certificate format. Nor does, under Equal Protection analysis, the Puerto Rico birth certificate format create a classification against nonbinary individuals. Accordingly, this appeal does not raise a genuine constitutional issue but rather reflects a policy disagreement that may only be properly adjudicated within the realm of the democratic process. See, U.S. v. Skrmetti, 605 U.S. ___, 145 S. Ct. 1816, 1837 (2025) ("This case carries with it the weight of fierce scientific and policy debates about the safety, efficacy, and propriety of medical treatments in an evolving field. The voices in these debates raise sincere concerns; the implications for all are profound. The Equal Protection Clause does not resolve these disagreements.").[3] Courts must respect the balance of interests, including the right of the people —through their government— to regulate sensitive matters. By contrast, the district court's ruling, as it stands, unjustly prioritizes individual claims over that of the Government's sovereign authority despite there being no reasonable basis to find that fundamental constitutional rights, classifications or illegitimate distinctions are infringed upon or made in this instance.

---

[2] As defined below.

[3] It bears noting, however, that the district court did not issue a declaratory judgment declaring the relevant portion of the Puerto Rico Civil Code or any other statute as unconstitutional. Instead, the district court hand made a public policy that fits Appellees' and the court's vision of what birth certificates must contain.

In any case, recent Supreme Court guidance discussing the Equal Protection Clause provides a clear framework for resolving the issue under the rational basis review standard. For example, the Court reversed and remanded for further consideration, under U.S. v. Skrmetti, 605 U.S. ___, 145 S. Ct. 1816 (2025), a Tenth Circuit decision that had permitted an Equal Protection claim to proceed against an Executive Order directing the Oklahoma State Department of Health to cease amending sex designations on birth certificates. See Stitt v. Fowler, Docket No. 24-801, ___ S. Ct.___ (2025), 2025 WL 1787695. This Court should follow the Supreme Court's guidance and apply the Skrmetti framework to the present case. Under that standard, Puerto Rico's birth certificate policy easily satisfies —indeed, significantly exceeds— the requirements of rational basis review.

With respect to this final point, the district court improperly shifted the burden of proof when assessing Puerto Rico's birth certificate format. Specifically, the court did not find, as the Appellees failed to demonstrate, that they had negated all conceivable rational bases for the challenged regulation or that an improper animus existed towards nonbinary individuals. Nevertheless, after determining that a classification existed, the court immediately focused on Appellants' purported failure to justify how excluding a third sex marker served a legitimate state interest. This reasoning contradicts foundational principles of constitutional law: under

4

rational basis review, the burden lies with the challenger to overcome the presumption of constitutionality afforded to government action.

Pursuant to the standard of rational review, the Puerto Rico birth certificate format more than exceeds what is required by the Constitution because it is rationally related to several legitimate state interests, namely: (1) the historical accuracy of its official documents; (2) maintaining a consistent and historical definition of sex on its birth certificates and has considerable discretion in defining the terms used in their own laws as well as deciding what records to keep; (3) the content of a birth certificate constitutes government speech which naturally implies that the Government has an interest in the accuracy of its speech that meets the rational standard; (4) safeguarding the accuracy of documents used to determine benefit eligibility and prevent fraud; (5) the transferability and marketability of official public records such as a birth certificate, and (6) interpreting its laws and designing and enforcing its own policies in accordance with said laws as it sees fit.

Accordingly, the appropriate public policy regarding sex markers is a matter for the legislative and executive branches, not the judiciary. The district court's flawed application of rational basis review further contravenes fundamental constitutional principles.

For these and other reasons, this Circuit should reverse the district court's Opinion and Order and dismiss the Appellees' claims.

5

## II.    JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 42 U.S.C. §1983, as this is an appeal from a final judgment of the United States District Court for the District of Puerto Rico granting a § 1983 petition and ordering the Government to amend Puerto Rico's birth certificate format to include an "X" option for nonbinary individuals. The notice of appeal was timely filed on July 1, 2025. *App.*, at 289.

## III.    STATEMENT OF ISSUES

1.    Whether Puerto Rico's birth certificate format creates a classification against nonbinary individuals.

2.    Whether Puerto Rico's birth certificate format survives rational scrutiny in this context under U.S. v. Skrmetti, 605 U.S. ___, 145 S.Ct. 1816 (2025).

3.    Whether there is a constitutional right to include a sex marker other than male or female on a government-issued birth certificate.

4.    Whether the district court's application of rational basis review impermissibly extended judicial authority, in violation of separation of powers principles

## IV.    STATEMENT OF THE CASE

On October 27, 2023, Ínaru Nadia de la Fuente-Díaz, Maru Rosa Hernández, André Rodil, Yelvy Vélez Bartolomei, Gé Castro Cruz, and Deni Juste (collectively, "Appellees") —all of whom identify as "nonbinary person[s]"— filed a complaint alleging, in broad strokes, that Puerto Rico's birth certificate format infringed upon their rights under the Fourteenth Amendment's Equal Protection and Due Process clauses, as well as their First Amendment rights to free speech insofar as it does not

6

allow them to identify as nonbinary on their birth certificates. *App.*, at 1-20.[4] As a result, Appellees requested declaratory and injunctive relief under 42 U.S.C. § 1983 and that the court issue a writ of *Mandamus* against the Demographic Registry of Puerto Rico to "permit transgender nonbinary persons born in Puerto Rico to correct their birth certificates to accurately reflect their true sex, consistent with their gender identity. . . ." *App.*, at 104-105.[5] Alongside their initial Complaint, Appellees filed a motion for preliminary injunction requesting injunctive relief along those same lines. *App.*, at 43-50.

In response, Appellants moved to dismiss the operative complaint, essentially averring that Puerto Rico's birth certificate format did not infringe upon Appellees' constitutional rights and that it survived rational review regardless, which Appellees opposed.[6] *App.*, at 119-140; 181-193. After reviewing the parties' positions on the matter, the district court entered an *Opinion and Order* wherein it denied both motions. *App.*, at 212-216. From the district court's perspective, Appellees' claim was a matter of first impression within the First Circuit that warranted further

---

[4] Subsequently, Appellees filed two amended complaints, with the operative complaint in this case being the Second Amended Complaint filed on November 15, 2023. *App.,* at 85-118. These complaints are largely identical, albeit with some minor alterations.

[5] Initially, Appellees' Complaint named then Governor Pedro Pierluisi-Urrutia and then Secretary of the Department of Health Carlos S. Mellado. These defendants were later automatically substituted by their successors in law: Governor González-Colón and Secretary of the Department of Health Dr. Ramos-Otero, respectively.

[6] On similar grounds, Appellants opposed Appellees' request for injunctive relief. *App.*, at 141-160.

7

exploration on the merits and as such should not be dismissed on a "pleader's suppositions." *App.*, at 214. But, by that same token, the district court understood that it was unable to determine Appellees' likelihood to prevail on the merits. *App.*, at 215-216.

On September 6, 2024, while the motion to dismiss was pending —at the district court's directive— Appellees moved for summary judgment. *App.*, at 194-211. Likewise, on January 10, 2025, the Appellants responded with an *Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment*.[7] *App.*, at 217-267.

On May 30, 2025, the district court issued an *Opinion and Order* granting Appellees' motion for summary judgment. *Add.*, at 1-19. Therein the district court reasoned that Appellees were entitled to relief under the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States. *Add.*, at 18-19. Because the district court determined that Puerto Rico's birth certificate format did not survive rational scrutiny, it declined to issue a ruling on Appellees' discrimination on the basis of sex, Substantive Due Process, and First Amendment claims. *Add.*, at 11-12.

---

[7] Although the matters in dispute in this appeal concern mostly questions of law not fact, it bears mentioning that Appellees never filed a counterstatement to Appellants' statement of uncontested material facts (*app.*, at 263-267) nor did they ever formally oppose Appellants' Cross-Motion (*app.*, 217-250). See, *add.*, at 21-30.

To summarize, the district court determined that its power of judicial review of unconstitutional laws and policies applied in this case, thus it declared that Puerto Rico birth certificate format was unconstitutional as applied to Appellees and did not implicate separation of powers concerns. *Add.*, at 13-14. Further, while the district court recognized the Government's interest in "maintaining accurate records of its citizens' sex at birth" as legitimate, from its point of view, such an interest was not served by prohibiting individuals from changing their gender to a nonbinary option instead of male or female. *Add.*, at 18. That is so because, to the district court, that interest was already better served by the Government's existing policy of retaining an individual's original birth certificate in its archives. *Add.*, at 18. Based on this, the district court ordered Appellants to "promptly amend their Application for Gender Change form to include an option to select an 'X' as one's gender marker on their birth certificate." *Add.*, at 19. On June 2, 2025, the district court entered final judgment in accordance with its *Opinion and Order*. *Add.*, at 20.[8]

On June 27, 2025, Appellants moved for reconsideration of the district court order and judgment. *App.*, at 268-286. Nevertheless, on June 30, 2025, the district court denied the motion without a hearing or even requesting opposing arguments. *Add.*, at 28 (Docket No. 62). On July 1, 2025, Appellees filed a *Motion for*

---

[8] Despite them having apparently prevailed on the merits before the district court, the *Judgment* incorrectly states that it is "dismissing the case with prejudice". *Add.*, at 20.

*Enforcement of Judgment* requesting that district court compel Appellants to amend Puerto Rico's birth certificate format and procedures in accordance with the *Opinion and Order* within a period "not [to] exceed another month." *App.*, at 287-288. That same day, Appellants filed a *Notice of Appeal* from the district court's *Opinion and Order* and Judgment. *App.*, at 289-290. Nevertheless, on July 8, 2025, the district court —without affording Appellants an opportunity to respond— granted Appellees' motion and ordered that the Government file proof of compliance with the *Opinion and Order* not later than July 31, 2025. *Add.*, at 28-29 (Docket No. 66).

On July 18, 2025, Appellants filed a *Motion to Stay Proceedings Pending Appeal*. *App.*, at 291-303. On July 22, 2025, *via a line order*, and again without requesting arguments in opposition from Appellees, the district court denied Appellants' *Motion to Stay Proceedings Pending Appeal*. *Add.*, at 29 (Docket No. 69). As a result, to preserve their right to be heard on appeal, Appellants' filed an emergency petition before this Court requesting that the proceedings before the district court be stayed during the proceedings of the instant appeal and that Appellants be excused from complying with the district court's order that Puerto Rico's birth certificate format be amended not later than July 31, 2025. On July 30, 2025, the Court granted Appellants' emergency petition and decreed that "enforcement of the district court's rulings in the underlying matter is stayed pending resolution of this appeal."

10

## V.    SUMMARY OF THE ARGUMENT

Analyzing Appellees claims under the framework of the Equal Protection Clause, they cannot maintain that the Puerto Rico birth certificate format treats them differently than it does any other citizen. On the contrary, the Puerto Rico birth certificate format —which records an individual's sex at birth— affords them exactly the same options it gives all individuals: the opportunity to amend, subject to some requirements outlined in the Puerto Rico Civil Code, the sexual designation on their birth certificate between male or female. Accordingly, the Puerto Rico birth certificate format does not create a classification writ large, much less one that would run afoul of the Equal Protection Clause.

To that point, even assuming for purposes of argument that the Puerto Rico birth certificate format creates a classification, under basic equal protection case law, the district court opinion fails for two main reasons. First, when subjecting a statute or policy to a rational review inquiry, it is the person who challenges the government action who bears the burden of establishing that the government's action is unsupported by "any reasonably conceivable state of facts." Heller v. Doe by Doe, 509 U.S. 312, 320 (1993). Far from that, however, Appellees only substantiated their challenge of the Puerto Rico birth certificate format on the naked assertion that the "only reason to make a distinction between binary and nonbinary trans people is an improper animus: the disapproval of [nonbinary individuals]." *App.*, 207

11

Second, the challenged birth certificate format was in no way rooted in prohibited animus against nonbinary individuals as a class. Moreover, the format is adequately supported by a whole roster of legitimate state interests that, despite purportedly applying the standard of rational review, the district court wholly discarded or outright ignored. Specifically, as will be further fleshed out below, the Government has an interest in: (i) the historical accuracy of its official documents; (ii) maintaining a consistent and historical definition of sex; (iii) the accuracy of the Government's official speech; (iv) safeguarding the reliability of documents used for grants and benefit eligibility; (v) the transferability and marketability of official public records, and (vi) interpreting and enforcing the Government's own laws and policies. With these interests in mind, Appellees contention —and the district court's conclusion— that Puerto Rico's birth certificate format is in any way rooted in prohibited animus is directly contradicted by the record.

Likewise, as a corollary to the above, it bears noting that the current format was essentially the consequence of a sister court's holding in Arroyo-González v. Rosselló-Nevares, 305 F.Supp.3d 327 (D.P.R. 2018) where it decreed that the Demographic Registry must incorporate an administrative procedure to allow transgender individuals to amend the sexual designation on their birth certificates between male or female. Thus, the Government's interest in following that court's directive constitutes, in itself, a rational basis. Further, the fact that Puerto Rico's

12

current birth certificate format essentially stems from the Government's good faith attempts to comply with the <u>Arroyo-González</u> holding essentially forecloses the notion that said format could somehow stem from discriminatory animus.

On top of that, the precise reasoning used by the district court to grant Appellees' claims in this case mirrors the Tenth Circuit's ruling in <u>Fowler v. Stitt</u>, 104 F.4th 770 (10th Cir. 2024) which the Supreme Court vacated and remanded in <u>Stitt</u>, 2025 WL 1787695,[9] for further consideration under <u>Skrmetti</u>, another case with devastating implications for the *Opinion and Order*'s conclusions.

Viewed through this lens Appellees' Equal Protection Claims falls flat. What is instead clear, is that Appellees do not present a colorable claim of constitutional violations under 42 U.S.C. § 1983 because they cannot point towards a constitutional, much less fundamental, right of theirs that the Puerto Rico birth certificate format presumably infringes on. Despite Appellees' arguments to the contrary, nothing in the Constitution would suggest that they are owed the "right" that the Government, through Appellants, certify and adopt their views on policy as the Government's own. In fact, the information on official documents such as birth

---

[9] To summarize, in <u>Stitt</u>, the Supreme Court issued an unpublished opinion granting certiorari and vacating and remanding the Tenth Circuit's ruling in <u>Fowler</u> —a case extensively cited by the district court as analogous to the instant appeal— for further consideration under <u>U.S. v. Skrmetti</u>, 605 U.S. ___, 145 S.Ct. 1816 (2025).

certificates and driver's license is government speech, and the Appellees do not have right to impose their views on the Government.

In the end, the district court's stringent application of what is, in essence, a lax standard rooted in judicial restraint, results in a direct intrusion on the political process and the Government's sovereign authority to interpret its laws and adopt the policy measures it deems appropriate. Unless a constitutional right is affected, which is clearly not the case here, courts must generally leave matters of policy to the appropriate branches of Government, particularly when its actions are supported by rational explanations and legitimate state interests. Instead, the district court lent credence to Appellees' blatant subterfuge to judicially impose on the Government questions of policy that must be debated and determined by way of the political process, not the courts.

On that note, as has been made resoundingly clear from the Supreme Court's recent pronouncements, judicial review is a tool that must be brandished carefully in matters that involve ever shifting social and policy questions and do not implicate fundamental constitutional rights because these are matters that are best resolved through representative bodies and the democratically prescribed processes. See Dobbs v. Jackson Women's Health Organization, 597 U.S. 215, 300 (2022) (citing Ferguson v. Skrupa, 372 U.S. 726, 730 (1963)); See also Dandridge v. Williams, 397 U.S. 471, 484-486 (1970).

14

## VI.    STANDARD OF REVIEW

A district court's entry of summary judgment is reviewed *de novo* on appeal. MacRae v. Matos, 106 F.4th 122, 132 (1st Cir. 2024) (so stating). The fact that a case was resolved upon cross motions for summary judgment "does not change this standard of review." Segrets, Inc. v. Gillman Knitwear Co., Inc., 207 F.3d 56, 61 (1st Cir. 2000).

## VII.    ARGUMENT

### A. The Puerto Rico birth certificate format does not create a classification against individuals that identify as nonbinary.

To recap, Appellees contend —and the district court agreed— that Puerto Rico's birth certificate format discriminates against them as nonbinary individuals because it only allows persons to amend their birth certificates to identify as either male or female but does not include a third gender-neutral category ("X") for people who, they allege, do not fall squarely within male or female sexual markers. Given that Puerto Rico law allows for transgender individuals to amend their birth certificates to change their sexual marker from male to female (or vice versa), from the district court's perspective, the Government's failure to extend such an option for individuals who identify as nonbinary is unsupported by a rational basis and thus

15

may be redressed through the vehicle of 42 U.S.C. § 1983. *Add*., at 18. However, such a conclusion fails as a matter of law and fact.[10]

The right to equal protection of the laws, boiled down to its most basic essence, provides citizens with the right that the government treat them the same as all similarly situated individuals, or that, in the event they do suffer selective treatment, that it is not based on prohibited considerations such as race, religion, or outright bad faith or malice against that class of persons. Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013). Accordingly, for equal protection analysis to be implicated, the first step is to determine whether a statute or policy in fact classifies individuals. Conversely, a law that is neutral on its face "and serving ends otherwise within the power of government to pursue" is generally valid even if it has the incidental effect of disproportionately affecting members of a protected class. Washington v. Davis, 426 U.S. 229, 242 (1976) ("[n]evertheless, we have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another."); Olympic Arms v.

---

[10] To make matters worse, in its *Opinion and Order*, the district court went as far as to state that "[Appellants] concede that the [Puerto Rico's birth certificate format] creates a classification, but dispute what level of scrutiny should apply to this classification." *Add*., at 10. However, as can be ascertained from both their unopposed *Cross Motion for Summary Judgment* and motion for reconsideration, Appellants have steadfastly argued throughout the case that Puerto Rico's birth certificate format treats all individuals equally precisely because it allows all individuals to change the sex listed on their birth certificates to male or female. *App*., at 235, 275.

Magaw, 91 F.Supp.2d 1061, 1071 (E.D. Mich. 2000) (when "a statute incidentally affects some people more than others does not, by itself, create classifications for review or evince an invidiously discriminatory purpose").

Viewed through this prism, Appellees equal protection arguments are unfounded. To wit, the current Puerto Rico birth certificate format operates to record an individual's sex be that male or female. It bears noting that the legal *status quo* allows for transgender individuals to amend the sex identified on their birth certificates between male and female. However, it would be illogical to conclude that Puerto Rico's current birth certificate format creates a classification because the Government complied with a judicial mandate in Arroyo-González.

In the end, the birth certificate format lists only sexes. In so doing, the birth certificate format treats all individuals equally insofar as it gives every person the option of amending between the two existing sexes: "male" or "female" on their birth certificates, subject to some requirements created by the Puerto Rico Civil Code. Given that the Puerto Rico birth certificate format encompasses only sex, the Government can accommodate amendments because all individuals are adequately represented by the male or female sexual designations, albeit perhaps not the one assigned to them at birth. But, unlike binary transgender individuals, nonbinary individuals allege that their identity does not fit into either male or female. Accordingly, in an equal protection context, Appellees are not "similarly situated"

17

to other individuals because their identity goes beyond the designations of sex, and —in that respect— goes beyond the scope of the current Puerto Rico birth certificate format. Even though Appellees might frame the Puerto Rico birth certificate format's lack of inclusion of such an identity as a *per se* classification against nonbinary individuals —to which the district court concurred— said format makes no distinction against any class of individuals whatsoever. Instead, the Puerto Rico's birth certificate format is neutral and applies equally to all Puerto Rico citizens. Based on this, there are no equal protection concerns here.

**B. Appellees' equal protection rights claims fail because, analyzed through the Equal Protection Clause framework, the Puerto Rico birth certificate format survives rational review**.

When evaluating compliance with the Equal Protection Clause, the scrutiny under which the statute or policy is to be analyzed depends on the type of classifications used and the rights it purportedly impacts. Some "pernicious" classifications such as race demand nothing but the "most exact connection between justification and classification." Students for a Fair Admissions, Inc. v. President and Fellows of Harvard College, 600 U.S. 181, 217 (2023) (quoting Gratz v. Bollinger, 539 U.S. 244, 270 (2003)). An individual's sex triggers a heightened degree of scrutiny although it does not rise to the level of a proscribed classification that would

18

warrant strict scrutiny. U.S. v. Virginia, 518 U.S. 515, 516 (1996).[11] Likewise, if a statute burdens a fundamental right, courts will "strictly scrutinize" and uphold it only in light of a "compelling interest incapable of being served by less intrusive means." Kittery Motorcycle, Inc. v. Rowe, 320 F.3d 42, 47 (1st Cir. 2003). If these concerns are not present, the challenged policy is to be reviewed under the rational basis standard and will generally be upheld so long as it is "rationally related to a legitimate state interest." Cook v. Gates, 528 F.3d 42, 61 (1st Cir. 2008).

Applying these precepts to Appellees' claims, were equal protection analysis necessary, the rational basis standard is appropriate here. That is so because Appellees do not have a fundamental right to add a third sex marker category ("X") to a government issued birth certificate precisely because the Puerto Rico birth certificate format does not affect any fundamental right of Appellees.[12]

Moreover, the Puerto Rico birth certificate format does not discriminate on the basis of sex because it does not create any distinction between persons of any sex, it does not provide "special benefits" to individuals on the basis of sex nor does it prefer one sex over the other. Gore v. Lee, 107 F.4th 548, 559 (6th Cir. 2024)

---

[11] This "moderate" level of scrutiny, wedged between the more permissive standard of rational review and the highly demanding requirements of strict scrutiny is commonly referred to as "intermediate scrutiny." Cohen v. Brown Univ., 101 F.3d 155, 182 (1st Cir. 1996).

[12] To that point, the Court's *Opinion and Order* evaluated Appellees' challenge to Puerto Rico's birth certificate format under a rational review scrutiny precisely because they failed to show that they in fact where either (i) impermissibly classified as members of a suspect or quasi-suspect class, or (ii) that a fundamental constitutional right of theirs had been infringed. *Add.*, at 12.

19

(Tennessee policy disallowing amendments to a birth certificates recording of an individual's sex at birth in light of that person's gender expression and/or identity "is simply a nondiscriminatory form of government speech embraced by some states about an undeniable historical fact"); see also Skrmetti, 145 S.Ct. at 1834 (Tennessee law that prohibited gender-affirming treatment to transgender minors did not discriminate on the basis of sex because individuals of either sex with the excluded diagnoses would not be eligible for the treatments banned therein).

Under this framework, the district court's equal protection analysis fails for two main reasons. First, the district court placed the burden of defending the challenged policy on Appellants despite Appellees' failure to show that the Puerto Rico birth certificate format was unsupported by a rational explanation. Second, Appellees' conclusory assertions to the contrary notwithstanding, the record unquestionably reflects that Puerto Rico's birth certificate format is soundly supported by a rational explanation in pursuit of legitimate state interests.

> i. **The district court inverted the applicable burden of proof when analyzing Puerto Rico's birth certificate format**.

Rational basis review is "a paradigm of judicial restraint." FCC v. Beach Commc'ns Inc., 508 U.S. 307, 314 (1993). As such, under this permissive standard of review the challenged policy is "presumed to be valid" and survives constitutional inquiry so long as it is "rationally related to a legitimate state interest." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985). As such, a plaintiff

20

can overcome his burden by "negat[ing] any and all conceivable bases upon which the challenged regulation might appropriately rest." González-Droz v. González-Colón, 660 F.3d 1, 9-10 (1st Cir. 2011). Also, the plaintiff may demonstrate lack of rational basis by showing "that the challenged government action was motivated by animus or ill-will." Klimik v. Kent Cty. Sheriff's Dep't, 91 Fed.Appx. 396, 400 (6th Cir. 2004). For these very reasons, the government "has no obligation to produce evidence to sustain the rationality of a statutory classification," Heller, 509 U.S. at 320, and its decision "may be based on rational speculation unsupported by evidence or empirical data" as it is not subject to courtroom fact finding. Beach Commc'ns Inc, 508 U.S. at 315; Association to Preserve and Protect Local Livelihoods v. Sidman, 147 F.4th 40, 55 (1st Cir. 2025).

When a suit implicates only social and economic policies that do not infringe on fundamental constitutional rights, if the challenger —in this case Appellees— fails to make such a showing, courts need not delve into what "such reasonably conceivable state of facts may be." Mulero-Carrillo v. Román Hernández, 790 F.3d 99, 107 (1st Cir. 2015). In that context, the Government's reasoning behind a challenged policy may only be questioned *if* the challenger carries their burden. Id. at 108.

The district court's *Opinion and Order* makes no finding that Appellees ever made such a showing, which means it was plainly unnecessary to delve into the

21

reasonings behind Puerto Rico's birth certificate format. However, once the district court concluded that a classification was purportedly made in this context, it proceeded to then immediately discuss Appellants' supposed failure to adequately explain how a legitimate state interest was served by not listing a third sexual marker on Puerto Rico's birth certificates. *Add*., at 12-19. From the district court's point of view, without any basis on the record, such a failure could only be explained by "animus" towards nonbinary individuals. *Add*., at 13-19. But such a leap in analysis was improper as a basic principle of law because Appellees never put forth any evidence, nor did they support their challenge of the birth certificate format in any way, other than the conclusory proposition that "only reason to make a distinction between binary and nonbinary trans people is an improper animus." *App*., at 207. This statement, completely bereft of any supporting evidence submitted to the record, was not enough to defeat the validity presumption that covers the Government's action and thus any Equal Protection Clause analysis should have ended there.

ii.    **Puerto Rico's birth certificate format is rationally related to a legitimate state interest**.

In any event, assuming that the district court applied the rational basis standard correctly, which Appellants wholeheartedly deny, Puerto Rico's birth certificate format is well supported by multiple rational bases and was not motivated by animus towards any group.

### a. Puerto Rico's birth certificate format is rationally related to several legitimate state interests.

To wit, first, the Government has an unquestionable interest in the historical accuracy of its official documents.[13] In this regard, the Government relies on historical data —such as an individual's sex (male or female), height, weight, and race— in its decision-making and policymaking processes. For instance, historical statistics are indispensable for forecasting trends and implementing policies that effectively address the needs of the population. Likewise, in the context of state and federal funding, it is imperative that government documents reflect only the male or female sex markers because the federal government solely recognizes these two sexes.[14]

In its *Opinion and Order*, the district court recognized such an interest but discredited the notion that the interest was served in this context by refusing to incorporate a new sex marker into the birth certificate's sex designations.

---

[13] Throughout its *Opinion and Order*, the district court solely discussed the Government's interest in the accuracy of its historical records in concluding that no such legitimate interest was established. As such, the court either silently discarded or plainly ignored all other interests cited by Appellants.

[14] Appellants' position aligns with the Federal Government's definition of sex, which recognizes *only* male and female categories. <u>See</u>, Department of Health & Human Services, Defining Sex: Guidance Federal Agencies, External Partners, and the Public Implementing Executive Order 14158, Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, https://womenshealth.gov/sites/default/files/_images/2025/2.19.25%20Defining%20Sex%20Guidance%20for%20Federal%20Agencies%2C%20External%20Partners%2C%20and%20the%20Public%20FINAL.pdf (last visit September 8, 2025).

Specifically, the district court reasoned that the existing scheme in cases where a birth certificate has been amended already serves that interest when it preserves in the Government's archives the original birth certificate as issued. *Add*. at 16-17. But such analysis is plainly improper in the context of rational review because what matters is whether a rational basis exists to support the challenged policy. Armour v. City of Indianapolis, Ind., 566 U.S. 673, 681-82 (2012). If a rational basis exists, and it is related to the purported classification, whether the court finds a policy imprudent, ineffective or imperfect does not mean it is irrational for constitutional purposes. See, Beach Commc'ns Inc., 508 U.S. at 315. Moreover, this less-exacting standard "tolerates classifications that may be overinclusive or underinclusive." Hope v. Comm'r of Ind. Dep't of Corr., 66 F.4th 647, 651 (7th Cir. 2023).

Second, the Government has a legitimate interest in maintaining a consistent and historical definition of sex on its birth certificates and has considerable discretion in defining the terms used in their own laws as well as deciding what records to keep. See, Tuan Anh Nguyen v. INS, 533 U.S. 53, 73 (2001) (respecting this "most basic biological difference []" avoids the risk of "making the guarantee of equal protection superficial"); Kasper v. School Board of St. Johns County, 57 F.4th 791, 803 n. 6 (11th Cir. 2022) (noting that "biological sex…is the driving force behind the Supreme Court's sex-discrimination jurisprudence"). Accordingly, the inclusion of a neutral sex marker would transform Puerto Rico's birth certificates

24

from objective records of biological sex into subjective declarations of personal identity. Such a radical change in concept would override the will of the Government to determine the form and way it wishes to categorize individuals for record keeping. Likewise, in more practical concerns, it could open the door for claims of other groups and classes of individuals who may not feel represented by the then three options afforded to them. This could, in turn, result in the birth certificate, through overinclusion of terms, losing its entire purpose of being a neutral document wherein the Government records its citizens' vital statistics. This, in turn, would give rise to significant concerns regarding the workability and administrability of the Demographic Registry, as it would be compelled —often at substantial cost and in an impracticable manner— to modify its internal administrative procedures to accommodate each individual group's petition. See Armour., 566 U.S. at 684 (2012) ("administrative considerations we have mentioned are sufficient to show a rational basis for the City's distinction"); Vlandis v. Kline, 412 U.S. 441, 459 (1973) (White, J., concurring) ("it must now be obvious, or has been all along, that, as the Court's assessment of the weight and value of the individual interest escalates, the less likely it is that mere administrative convenience and avoidance of hearings or investigations will be sufficient to justify what otherwise would appear to be irrational discriminations.")

Third, as discussed earlier, the content of a birth certificate constitutes government speech which naturally implies that the Government has an interest in the accuracy of its speech that meets the rational standard. <u>Gore</u>, 107 F.4th at 559; <u>Corbitt v. Secretary of the Alabama Law Enforcement Agency</u>, 115 F.4th 1335, 1352 (11th Cir. 2024) (comparable holding in the context of state-issued driver's licenses). Similar to the above, maintaining the format relates to the Government's interest in expressing the undeniable viewpoint that, without undermining nor questioning the validity of the many ways individuals may identify themselves, there are only two *sexes*, and that is all that the Puerto Rico birth certificate format was designed to reflect for *all citizens*.

Fourth, the Government has a legitimate state interest in safeguarding the accuracy of documents used to determine benefit eligibility and prevent fraud. <u>Hartin v. Dir. Of Bureau of Recs. & Stat</u>., 347 N.Y.S. 2d 515, 518 (N.Y. Sup. Ct. 1973) (holding that the "public interest for protection against fraud" outweighs the "desire of concealment of a change of sex"). Namely, permitting the circulation of birth certificates that do not indicate a clearly defined male or female sex marker could incentivize bad actors to exploit discrepancies arising from ambiguous or indeterminate sex designations in official documents. It could also motivate the forgery or manipulation of documents to unlawfully receive benefits, services, or rights afforded by the Government and, consequently, compromise the security of

26

state and federally funded programs. Particularly when the Government relies on the administrative uniformity and consistency of these documents to distribute federal and local grants.

Fifth, the Government has an interest in the transferability and marketability of official public records such as a birth certificate. To that point, the district court noted that "Puerto Rico will join at least seventeen other states who already permit residents to include a nonbinary or gender-neutral sex or gender marker on birth certificates." *Add*., at 2-3. Still, the other side of that premise is that the majority of states and countries in the world only recognize male or female sex designations. Further, and perhaps more importantly, most states that do, have done so using the legislative process and not via judicial fiat. As such, not limiting changes on birth certificates to sexual designations between male and female could burden their transferability and undermine the trustworthiness of the Government's official documents and records because where the Government to officially display a third category, its citizens could face administrative or logistical hurdles when they seek to move to or do business in jurisdictions that do not, as of yet, officially recognize a third sex marker.

Sixth, the Government has an interest in interpreting its laws and designing and enforcing its own policies in accordance with said laws as it sees fit. That is why, in the context of staying a case on appeal, when a government is "enjoined by

27

a court from effectuating statutes enacted by representatives of its people" courts have considered such an intrusion into democratic process as a "form of irreparable injury" in and of itself. Dist. 4 Lodge of the Int'l Ass'n of Machinists and Aerospace Workers Local Lodge 207 v. Raimondo, 18 F.4th 38, 47 (1st Cir. 2021) (quoting Maryland v. King, 567 U.S. 1301, 1303 (2012)). Similarly —in the context of nationwide injunctions— the Supreme Court stressed that preventing the government from implementing its policies against nonparties irreparably harmed its sovereign authority because the court overstepped into the realm of a "coordinate branch of the Government." Trump v. CASA, Inc., 606 U.S. ___, 145 S.Ct. 2540, 2561 (2025).

　　　Extending such a logic by way of analogy to the instant appeal, the same interests and discretionary precepts, rooted in the concept of separation of powers, are at issue here but in even greater force, for not only is the district court intruding into the Government's interest in implementing its own policies, complying with the district court's order requires Appellants —and by extension the Government— to adopt Appellees' and the district court's own view of what sexual markers should or should not be recognized on the Government's officially sanctioned birth certificates.

b. **The genus of Puerto Rico's current birth certificate format is the <u>Arroyo-González</u> opinion and the process outlined therein, not discriminatory animus**.

Appellees center their claims around their conclusory assertion that Puerto Rico's birth certificate policy stems from the Government's purported disapproval of nonbinary individuals. Still, to show that an improper animus towards a group is present, the plaintiff "must prove that the challenged government actions were motivated by personal malice unrelated to the defendant's official duties." <u>Hilton v. City of Wheeling</u>, 209 F.3d 1005, 1008 (7th Cir. 2000). Here, again, Appellees have failed to present a single plausible claim or identify any evidence that could support the conclusion that an improper animus toward nonbinary individuals influenced the creation of the current birth certificate format. To the contrary, when viewed in the proper historical context, the argument that Puerto Rico's birth certificate format came about as a result of purported "animus" against nonbinary or any other set individuals is particularly duplicitous in this instance.

Throughout history, Puerto Rico law did not encompass amendments for transgender individuals in any capacity. <u>Arroyo-González</u>, 305 F.Supp.3d. at 329. Nevertheless, the <u>Arroyo-González</u> court[15] held that transgender individual's right to decisional and informational privacy encompassed a right to amend their birth

---

[15] In an *Opinion and Order* issued by the now retired U.S. District Judge, the Hon. Carmen Consuelo Cerezo.

29

certificates and switch their designation from male to female (or vice versa). In said ruling, the district court explicitly and thoroughly decreed the process to which the Government should adhere to in allowing transgender individuals to amend their birth certificates. Specifically, the court ordered as follows:

> [T]he Demographic Registry of Puerto Rico SHALL ADOPT the criteria of the Department of Transportation and Public Work's "Request to Change Transgender Persons' Gender Marker," DTOP–DIS–324 Form, as the application form to be submitted by transgenders and which shall be accepted as the first step towards the issuance of their new birth certificates, in compliance with the Court's mandate. *See* Attachment A. The transgender individual shall present the application accompanied by one of the following documents: (1) a passport that reflects the person's true gender, or (2) a driver's license that reflects the person's true gender, or (3) a certification issued by a healthcare professional or mental health professional with whom the person has a doctor-patient relationship stating that based on his or her professional opinion *the true gender identity of the applicant is female or male and that it is expected that this will continue to be the gender with which the applicant will identify him or herself in the future.* If the applicant has not had any of the documents requested previously issued, a health care professional or mental health professional with whom the applicant has a doctor-patient relationship *must certify based on his or her professional opinion that the true gender identity of the applicant is ( ) female or ( ) male* and that it is expected that this will continue to be the gender with which the applicant will identify him or herself in the future. *See* Part B of DTOP–DIS–324 Form, which is included as Attachment A to this Judgment. Arroyo-González, 305 F.Supp.3d at 335 (emphasis added).

As can be gleaned from the above, the <u>Arroyo-González</u> court established that transgender persons would amend the sexual designation on their birth certificates by certifying to the Demographic Registry whether they identified as *female or male*.

Once the corresponding administrative processes were completed, the Demographic Registry would issue a new birth certificate to said individual with the amended sex marker. Later, to comply with the then applicable *status quo*, the Puerto Rico Civil Code essentially enshrined into law <u>Arroyo-González</u>'s holding by incorporating the method established by the court for birth certificate amendments. P.R. Laws Ann. tit. 31, § 7655.[16] Thus, undoubtedly Puerto Rico has a legitimate interest in complying with final judicial decrees as they were ordered.

Essentially, it would be illogical to suggest that Puerto Rico's current birth certificate scheme, based on the Puerto Rico Civil Code, is unconstitutional because the Government, by complying with a judicial mandate precisely as ordered, somehow evinced a prohibited animus against nonbinary individuals. Following such a reasoning to its logical conclusion, the district court's opinion, in so hastily taking as true Appellees' unsupported assertions that the Puerto Rico birth certificate format was premised on animus towards them, stands for the premise that the <u>Arroyo-González</u> court transposed a discriminatory intent to the Government against nonbinary individuals by complying with said opinion.

---

[16] Specifically, after describing the process for amending the original birth certificate in cases where there was sexual ambiguity or error in recording the individual's biological sex at birth, the Civil Code clarifies that nothing prescribed therein is intended to modify the current process for amending birth certificates. <u>See</u>, P.R. Laws Ann. tit. 31, § 7655; <u>see also</u>, PR LEGIS 55 (2020), 2020 Laws of Puerto Rico Act 55 (H.B. 1654).

31

**C. The district court's reasoning has already been called into question by the Supreme Court**.

The district court's analysis and conclusion were largely supported by the Tenth Circuit's holding in <u>Fowler</u>, 104 F.4th at 770. In that case, the Governor of Oklahoma issued an executive order directing the Oklahoma State Department of Health ("OSDH") to halt a prior policy that permitted amendments to sex designations on birth certificates. As in the present case, the plaintiffs —who identified as transgender individuals— sued the governor and other state officials, asserting claims under the Equal Protection and Due Process Clauses of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. The district court granted the defendants' motion to dismiss both the equal protection and substantive due process claims.

On appeal, the Tenth Circuit reversed the dismissal of the equal protection claim but affirmed the dismissal of the substantive due process claim. The court held that <u>Bostock v. Clayton County</u>, 590 U.S. 644 (2020), was controlling and that the plaintiffs had plausibly alleged that the policy discriminated on the basis of sex. While declining to decide whether transgender status constitutes a quasi-suspect class, the court determined that intermediate scrutiny applied, concluded that the policy failed even rational basis review, and rejected the state's asserted interests in protecting women and maintaining the accuracy of vital records. With respect to this final interest, the Tenth Circuit —as the district court here— held that it lacked a

32

rational relationship to the prohibition on sex changes, as Oklahoma's existing policy of retaining original, unaltered birth certificates already served that purpose. Fowler, 104 F.4th at 795.

However, as previously noted, the Supreme Court vacated this decision and remanded the case for further consideration in light of Skrmetti. See, Stitt, 2025 WL 1787695. Appellants diligently brought this fact and the similarities between these two cases to the district court's attention, nevertheless, in denying Appellants' request to stay on appeal, the court stated the following: "[m]oreover, a careful reading of the Opinion at issue makes clear that this court did not rely on the Tenth Circuit's decision in *Fowler*, and that references to that case were included as dicta or persuasive authority only." *Add*., at 29.

Be that as it may, the district court's *Opinion and Order* thoroughly recaps the underlying fact pattern behind the Tenth Circuit's holding in Fowler, and — closely mirroring the Fowler opinion— concludes as follows:

> Yet the Fowler Court found that [the] interest [on the accuracy of vital records], though legitimate, was not rationally related to the challenged policy because "Plaintiffs want amended birth certificates for their own use— they are not trying to prevent Oklahoma from keeping and then later accessing original birth certificates." The court went so far as to call the state's purported interest a "non sequitur." Id. Because Oklahoma already had a protocol for retaining original birth certificates after they were amended for adoption purposes, the court found the policy was not rationally related to the defendants' asserted interest in preserving the accuracy of vital statistics.

33

**Such is the case here**. It is not disputed that Puerto Rico has a legitimate interest in recording facts about its citizens at birth and maintaining accurate vital records. **But here, as in Fowler**, the Commonwealth already has existing processes in place to retain original birth certificates in cases where a birth certificate has been subsequently amended. Plaintiffs do not seek to alter or eliminate these processes, nor do they seek to prevent the Commonwealth from recording and thereafter storing vital statistics. Quite the opposite: **Plaintiffs here, as in Fowler**, "merely want amended birth certificates for their own use that do not require any changes to the original records kept by the state." Defendants' argument regarding the maintenance of records is, **as in Fowler, a "non sequitur**." *Add*., at 17-18. (cleaned up) (emphasis added).

As such, regardless of the persuasive weight the district court deems itself to have or have not afforded to the <u>Fowler</u> case, it is unquestionable that the logic behind the district court's conclusion closely resembles that of the <u>Fowler</u> court. Thus, in light of the Supreme Court's later vacatur of the Fowler decision in <u>Stitt</u>, it is now unequivocally clear that the applicable lens through which claims of Appellees' ilk must be evaluated through the court's opinion in <u>Skrmetti</u>. Viewed through that prism, the district court's ruling must be reversed as a matter of course. Quite simply, although in denying Appellants' motion for a stay pending appeal the district court found that <u>Skrmetti</u> was unapplicable to the present controversy, the fact of the matter is that in a post <u>Skrmetti</u> landscape, the district court's reasoning is unsustainable.

In <u>Skrmetti</u>, the Supreme Court held that a Tennessee statute banning certain gender-affirming procedures for minors who suffered from gender dysphoria, gender

34

identity disorder, or other diagnoses created a classification based on age and medical use but survived rational review. Faced with the question of whether the statute unconstitutionally discriminated against transgender people, the Supreme court reasoned that it did not. Skrmetti, 145 S.Ct. at 1833-1834. In simple terms, the court explained that while the excluded diagnoses were applicable only to transgender individuals, the unaffected diagnoses included both transgender and cisgender individuals. Based on this, the court understood that the challenged bill, as enacted, could not discriminate on the basis of transgenderism because transgender individuals could theoretically be both affected or unaffected by the bill. Likewise, it determined that the law did not discriminate on account of sex because both female and male transgender individuals would be burdened by the excluded diagnoses. Id.

Applying this framework, the Puerto Rico birth certificate format cannot be discriminatory. Here, even if the Puerto Rico birth certificate format could be construed as "affecting" anybody, as in Skrmetti, it would affect individuals born male or female alike since said format essentially permits any individual to amend their birth certificate and provides them the options of the two sexes, male or female,

if the requirements contained in the Puerto Rico Civil Code are met (including a medical certification of their requested change).[17]

Thus, the Puerto Rico birth certificate format does not exclude nonbinary individuals precisely because it gives them the same options it gives all other individuals. Still, where the sex-based format somehow framed as an "exclusion" of nonbinary persons, which it is not, it would not be on the basis of their nonbinary identity because the format also precludes transgender individuals and binary individuals who cannot receive a medical certification of their change or any other required document from amending their birth certificates. Put more plainly, under the logic of Skrmetti, to the extent the Puerto Rico birth certificate format "affects" nonbinary individuals, they would not be the only class of individuals so "affected" by the format. As such, animus against nonbinary could not be the underlying reason for the challenged format. Precisely for that reason it must survive rational review. Moreover, in the end, even if this format were to be considered "underinclusive" of nonbinary individuals, over and under-inclusiveness are permissible in the context of a rational review inquiry. Hope, 55 F.4th at 651; Nicholas v. Mason, 2023 WL 10668991 *1, *10 (D.N.H. Dec. 28, 2023) ("While these over-and under-inclusiveness arguments may be more relevant for purposes of an intermediate

---

[17] Specifically, the Puerto Rico Civil Code permits a change upon presentation of one of the following documents: a valid passport or driver's license with the applicable change or the medical certification discussed above.

36

scrutiny First Amendment analysis, they do not aid [the plaintiff] on rational basis review.")

### D. The Puerto Rico birth certificate format does not implicate Appellees' constitutional rights.

With this in mind, it bears remembering that § 1983 serves as a method for citizens who suffer a deprivation of "any rights, privileges, or immunities *secured by the Constitution and laws*" at the hands of a person acting under color of state law, to obtain a judicial remedy for such an injury. Id., (emphasis added). Thus, for Appellees claims to succeed, they must effectively identify a constitutional right of theirs that has been affected by Appellants. In an attempt to do so, Appellees gesture broadly towards their rights of equal protection, liberty, privacy and freedom of speech to suggest that all these rights, taken together, converge in such a way to allow them to force the Demographic Registry of Puerto Rico to amend their birth certificates because doing so would be "central to [their] individual dignity and personal autonomy," and the current Puerto Rico birth certificate format is —to Appellees' judgment— "arbitrary." *App.,* 88.

Still, enumerating a list of federal rights next to one's preferred policy choice does not automatically transmute such a policy preference into a constitutionally protected right. Rather, these rights are those that are "deeply rooted in this Nation's history and tradition." Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 503 (1977); see also Canna Provisions, Inc. v. Bondi, 138 F.4th 602, 612 (1st Cir. 2025)

37

(cautioning against "sweeping claims of fundamental rights"). Based on this, it is borderline tautological to suggest that amending the sexual marker on an individual's birth certificate to reflect a marker that is not envisioned within male or female binary is not "deeply rooted" in this Nation's history. To date, neither the Appellees nor the district court have cited any constitutional provision, statute, or binding precedent that creates a right to an "X" marker on government-issued birth certificates.

As it stands, Appellees claims stem from what appears to be a fundamental misunderstanding of the purpose of a birth certificate. A birth certificate is not a private document on which citizens may express all aspects of their individuality. Instead, these are official statistical documents used by the Government to record the vital information of individuals. In that sense, what is contained in these documents constitutes government speech. Gore, 107 F.4th at 559; Corbitt, 115 F.4th at 1352 (similar holding in the context of state-issued driver's licenses). Accordingly, Appellees do not have a right to force the Government adopt their views on sexual expression in its official government-issued documents.

This is particularly the case in light of the undeniable fact that the Puerto Rico birth certificate format in no way limits nor impedes Appellees from expressing their identity and their views on such as they see fit. Notwithstanding, Appellees have a right to identify *themselves* as nonbinary and —to the extent such expression does

38

not impinge on the rights of others— live their lives in accordance with that identity, but they do not have the right for the Government, and by extension Appellants, to officially certify their expression on its own state-sanctioned birth certificates' sexual designation.

Evaluated in this context, it is evident that Appellees' 42 U.S.C. § 1983 claim fails as a matter of course because they did not present the most basic element of an action under this statute, that is: an infringed upon right. Despite their threadbare gestures towards various constitutional rights, chief among these the right of equal protection, nothing in the U.S. Constitution nor Supreme Court case law points towards the notion that identifying as nonbinary in government-issued vital documents is a constitutionally protected right. Thus, viewing Appellees' claims in the proper historical context it is evident that Appellees true aim is to essentially extend the holding of <u>Arroyo-González</u>, 305 F.Supp.3d at 327 so that it may apply to them.

As discussed previously, through the lens of the right to privacy as interpreted then, the district court then ordered the Demographic Registry of Puerto Rico to adopt an application form and instate a process through which transgender individuals would amend the sex on their birth certificates to male or female,

depending on the circumstance. Id., at 335.[18] The Arroyo-González holding was never appealed by the then sitting Government and it later was incorporated in the Puerto Civil Code. However, despite being extensively cited by Appellees and the district court, the Arroyo-González holding is of little to no persuasive value in the present context insofar as the case is no longer good law given that the scope of the federal right to privacy has been markedly reduced upon the Supreme Court's holding in Dobbs, 597 U.S. at 215 (neither the right of personal privacy nor the Fourteenth Amendment's Due Process Clause provide a federal right to abortion).[19]

### E. In so stringently applying the standard of rational review to Puerto Rico's birth certificate format, the district court exceeds the scope of judicial review and infringes upon the Government's sovereign authority.

Undoubtedly, federal courts' power of judicial review flows directly from the Constitution. Marbury, 5 U.S. at 177. It is through the exercise of this power that courts safeguard the rights of the citizens of this Nation by striking down laws "repugnant to the constitution." Id. Still, such power must be exercised with great

---

[18] Notably, as was explained above, the Arroyo-González court made no mention of nonbinary individuals and specifically required transgender individuals who sought to amend their birth certificates to certify whether their identity was explicitly "female" or "male."

[19] The district court clarified that the Arroyo-González ruling did not apply here because Appellees' right to informational privacy was "not implicated." Add., at 4 n. 3. Still, both opinions are strikingly similar in the sense that they reach practically the same result through different constitutional avenues. On that basis, it is worth stressing that to the extent Appellees or the district court look towards Arroyo-González's result for guidance, they tread on uncertain legal footing because: (a) that case was —as the district court itself noted—premised on the right to informational privacy; and (b) its reasoning does not survive muster in a post Dobbs and Skrmetti context.

care so that courts do not exceed their adjudicative function and delve into the policymaking role generally reserved to the other co-equal branches of government. El-Shifa Pharm. Indus. Co. v. U.S., 607 F.3d 836, 840 (D.C. Cir. 2010) (highlighting, in the context of a political question case, that controversies which revolve around "policy choices and value determinations" are to be left to Congress or the Executive Branch) (quoting Japan Whaling Ass'n v. Am. Cetacean Soc., 478 U.S. 221, 230 (1986)).  This notion serves as the pillar for the concept of rational scrutiny, because —when statutes do not infringe on fundamental rights nor discriminate against suspect classes— courts afford great latitude to the challenged government action. Raidoo v. Moylan, 75 F.4th 1115, 1121 (9th Cir. 2023) (rational review is "highly deferential" to the government because it is a "paradigm of judicial restraint") (cleaned up).

Contrary to these precepts, however, the district court gave zero deference to the Government's explanations for its policymaking prerogatives and adopted wholesale Appellees' claims of discrimination, despite the record being bereft of any evidence to support such a theory. Further, the court handwove away any potential separation of powers concerns extensively argued by the Appellants premised on the notion of constitutional judicial review under Marbury, 5 U.S. at 177-78. But, in so doing, the district court's misapplication of the rational review standard when evaluating Puerto Rico's birth certificate format oversteps its fundamental duty to

41

"say what the law is" and essentially legislated, through judicial decree, what it believed the law *should be*. Marbury, 5 U.S. at 177.

In sum, it is a purview of the Government to —modeled within the confines of what was established by the Puerto Rico legislative assembly in Puerto Rico's Civil Code— interpret its laws and create and enforce policies in accordance with said laws as it deems it fit. As a consequence of its *Opinion and Order*, the district court essentially abrogated this function for itself and legislated to its preference Puerto Rico's policy regarding the recognition sexual expressions that are still hotly debated topics in both the judicial and legislative fora.[20] The result is further muddled by the district court's failure to expressly specify the precise provision or action it deemed unconstitutional, as revealed by a close reading of its opinion. Essentially, the district court declared that "Puerto Rico's current Birth Certificate Policy"[21] is not supported by a rational basis and ordered Appellants to redress its purported unconstitutionality by "amending their Application for Gender Change form to include an option to select an 'X' as one's gender marker on their birth

---

[20] In Appellees' own words: "[The district court] is confronted with new terms and ideas that have been just recently developed, not only because of changes in the theoretical conception of society and its constituents, but because of medical and scientific developments." *App*., at 204.

[21] The court broadly defines the term "Birth Certificate Policy" as follows:

> Puerto Rico's current practice of allowing individuals with a binary gender identity to correct the gender marker on their birth certificates to align with their true gender identity (either from male to female, or from female to male), while not allowing nonbinary individuals (individuals whose gender identity is neither male nor female) to do the same. *Add*., at 4.

42

certificate." *Add*., at 12-19. Puzzlingly, the district court did not strike down Article 694 of the Puerto Rico Civil Code —the legal basis for the current administrative practice— nor any other statute or executive order.[22] Ultimately, the district court's *Opinion and Order* contains only a vague proclamation that *something* within Puerto Rico's legal and administrative framework related to birth certificates was unconstitutional, and a subsequent judicial decree of what the policy should look like moving forward. Such a sweeping pronouncement is not only far beyond the scope of rational review, but also completely foreign to the proper discharge of the power of judicial review.

Based on sound constitutional principles of restraint and deference to the Government —and given that the policies and laws behind Puerto Rico's birth certificate format are health and welfare policies that do not implicate fundamental constitutional rights— the district court was obligated to leave such a question to the people of Puerto Rico, their elected representatives and the democratic process. See Dobbs, 597 U.S. at 300 (in the context of abortion regulation, courts could not place its own beliefs over those of the legislative process even if "the laws at issue concern

---

[22] The act of interpreting what it is that the court ultimately struck down in its *Opinion and Order* is further complicated when remembering that the *Judgment* entered in this case, for some reason, only states that Appellees' claims were dismissed.

matters of great social significance and moral substance.") As was eloquently explained by the Supreme Court:

> The voices in these debates [about gender expression and its intersection with medicine and science] raise sincere concerns; the implications for all are profound. The Equal Protection Clause does not resolve these disagreements. Nor does it afford us license to decide them as we see best. Our role is not "to judge the wisdom, fairness, or logic" of the law before us, but only to ensure that it does not violate the equal protection guarantee of the Fourteenth Amendment. Having concluded it does not, we leave questions regarding its policy to the people, their elected representatives, and the democratic process. Skrmetti, 145 S.Ct. at 1837.

Further, this discussion on the prudential limits of rational review and the perils of exercising what the Supreme Court describes as "raw judicial power" dovetails perfectly with the previously discussed historical context that led to Puerto Rico's current birth certificate format and amendment procedure. See, Dobbs, 597 U.S. at 228-29 (From the Supreme Court's perspective, its previous opinion in Roe v. Wade, 410 U.S. 113 (1973) was an exercise of "raw judicial power" that usurped the political process' policymaking role and "sparked a national controversy that has embittered our political culture for a half century.")  In that sense, the Arroyo-González court, through its outright decree on how the Government would have to address the topic of transgender birth certificate amendments, created a scheme that —taking Appellees' conclusory arguments at face value for the purpose of argumentation— resulted in the purported discrimination of nonbinary people

44

simply because the claims of nonbinary people had not been brought before the district court in that case and the court failed to envision them when drafting its order.[23] Situations such as these are precisely why the democratic process exists. The democratic process allows for collective citizen input that is simply impossible to incorporate into the adversarial and individual nature of legal proceedings.

Put more simply, Appellees essentially couch what is a request for their preferred *policy* through the guise of a claim for a constitutional right. Accordingly, the appropriate arenas for their demands are the legislative forums, the political process and the realm of public opinion, not the courts. Even if the political process does not afford them the policy outcomes they desire, this does not then create a vehicle for them, much less the courts, to impose upon the rest of the populace Appellees' views. Unfortunately for Appellees' case, this is not what the courts are for.

---

[23] To be clear, Appellants strongly reiterate their arguments that the current birth certificate policy does not classify nor discriminate against nonbinary individuals. This line of argumentation is not included as a concession but rather to illustrate —taking as a given Appellees' claims of discrimination in this instance for the sake of argumentation only— the pratfalls of where resolving questions of policy with vast judicial proclamations may lead to. To that point, within this illustrative framework, Appellants caution that adding to the Arroyo-González's sweeping pronouncement with yet another sweeping judicial pronouncement to extend said ruling to nonbinary individuals could result in unforeseeable consequences. More specifically, particularly in this still largely developing context, another Equal Protection Clause claim may arise down the line from an —as of yet unidentifiable— class of persons that could presumably feel retroactively excluded by the district court's current judicially imposed mandate.

## VIII.    CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons this Circuit should *reverse* the district court's *Opinion and Order* and dismiss Appellees' claims.

### RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico this 10th day of September, 2025.

*s/Omar Andino-Figueroa*
**OMAR ANDINO-FIGUEROA**
Solicitor General of Puerto Rico

*s/Frank A. Rosado-Méndez*
**FRANK A. ROSADO-MÉNDEZ**
Deputy Solicitor General

46

## CERTIFICATE OF FILING AND SERVICE

**WE HEREBY CERTIFY** that on this same date we have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

In San Juan, Puerto Rico this 10th day of September, 2025.

*s/Omar Andino-Figueroa*
Solicitor General of Puerto Rico
USCA No. 1197240

*s/Frank A. Rosado-Méndez*
Deputy Solicitor General
USCA No. 1209179

## CERTIFICATE OF COMPLIANCE WITH RULE 32(G)

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1.  This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B):

    [x] This brief contains 11,097 words in compliance with Fed.R.App.P. 32(a)(7)(B), excluding the parts of the brief excluded by F.R.App.P. 32(f).

    [ ] This brief uses a monospaced typeface and contains [state the number of] lines of text.

2.  This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

    [x] This brief has been prepared in a proportionally spaced typeface using Times New Roman, Size 14.

    [ ] This document has been prepared in a monospaced typeface using [state name and version of word-processing program] with [state number of characters per inch and name of type style].

*s/Omar Andino-Figueroa*
Solicitor General of Puerto Rico
USCA No. 1197240

*s/Frank A. Rosado-Méndez*
Deputy Solicitor General
USCA No. 1209179

Dated: September 10, 2025.

48

# United States Court of Appeals
## For the First Circuit

———————————

### No. 25-1638

ÍNARU NADIA DE LA FUENTE DÍAZ; MARU ROSA HERNÁNDEZ; ANDRÉ RODIL; YEIVY VÉLEZ BARTOLOMEI; GÉ CASTRO CRUZ; DENI JUSTE,

Plaintiffs – Appellees,

v.

JENNIFFER A. GONZÁLEZ COLÓN, in the official capacity as Governor of the Commonwealth of Puerto Rico; Dr. VÍCTOR RAMOS OTERO, in his official capacity as Secretary of the Department of Health of the Commonwealth; WANDA LLOVET DÍAZ, in the official capacity as the Director of the Division of Demographic Registry and Vital Statistics of the Commonwealth,

Defendants – Appellants,

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon.  María Antongiorgi-Jordán, U.S. District Judge]

———————————

**ADDENDUM TO BRIEF FOR DEFENDANTS-APPELLANTS JENNIFFER A. GONZÁLEZ-COLÓN, DR. VÍCTOR RAMOS OTERO AND WANDA LLOVET DÍAZ**

## INDEX OF ADDENDUM

| DOCUMENT | PAGE(S) |
|---|---|
| Opinion and Order entered on: 05/30/25 (Docket Num. 59) | **1-19** |
| Judgment entered on: 06/02/25 (Docket Num. 60) | **20** |
| Civil Docket for Case No: 3:23-cv-01544-MAJ | **21-30** |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| ÍNARU NADIA DE LA FUENTE DÍAZ, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>JENNIFFER GONZÁLEZ COLÓN, *et al.*,<br><br>    *Defendants*. | Civ. No. 23-01544 (MAJ) |

## <u>OPINION AND ORDER</u>

### I.    Introduction

This is an action brought by six nonbinary individuals born in Puerto Rico, who claim that the Commonwealth's current Birth Certificate Policy violates the right to equal protection under the Fourteenth Amendment of the United States Constitution. Since 2018, transgender individuals in Puerto Rico have been permitted to amend the gender marker on their birth certificate, from either male to female or from female to male. But the Plaintiffs in this case are nonbinary, meaning that their gender identity is neither male nor female. Their request is simple: to be permitted to have a gender marker on their birth certificate that reflects their true gender identity, like everyone else. Specifically, Plaintiffs request the Court to order the Demographic Registry of Puerto Rico to modify its application to amend a Puerto Rican birth certificate, to include an option to change one's gender marker to an "X."

**1**

Defendants oppose Plaintiffs' request, arguing that the government of the Commonwealth of Puerto Rico has a legitimate interest in maintaining vital records and statistics regarding its citizens. Yet this argument ignores the fact that the Commonwealth already permits its citizens to amend information on their birth certificates for various reasons, including to modify the gender marker, and has already enacted legislation to ensure that in the case of such modifications, the original, unaltered birth certificates are preserved by the state.

The Court thus finds that there is no rational basis to deny Plaintiffs' request. The current Birth Certificate Policy of the Commonwealth of Puerto Rico arbitrarily distinguishes between binary and nonbinary individuals and subjects nonbinary individuals to disfavored treatment, without any justification for doing so. In such cases, it is the duty of the federal courts to intervene, to guarantee the equal protection of all persons under the law.

Plaintiffs' Motion for Summary Judgment is therefore **GRANTED**. Defendants are hereby **ORDERED** to amend the Application for Gender Change form to include an option to select an "X" as one's gender marker on one's birth certificate. In doing so, Puerto Rico will join at least seventeen other states who already permit residents to include a nonbinary or gender-neutral sex or gender marker on their birth certificates.[1]

---

[1]        At the time of the publishing of this Opinion and Order, these states include: California, *see* Form VS 24B, DEP'T OF PUB. HEATH – VITAL RECS., https://www.cdph.ca.gov/CDPH%20Document%20Library/ControlledForms/VS24B.pdf (last visited May 14, 2025); Colorado, *see* Form to Correct or Change a Colorado Birth Certificate, DEP'T OF PUB. HEALTH & ENV'T, https://drive.google.com/file/d/12_rmiKpawHmLRBuLQiuxulojQAVT93D/view (last visited May 14, 2025); Sex Designation Form, DEP'T OF PUB. HEALTH & ENV'T, HTTPS://DRIVE.GOOGLE.COM/FILE/D/1OcAQCA1AONUZR1ZiZEscXA19YA8OIXZX/VIEW (last visited May 14, 2025); Connecticut, *see* Instructions and Forms for Amending Sex on Birth Certificate, DEP'T OF PUBLIC HEALTH, https://portal.ct.gov/-/media/departments-and-agencies/dph/hisr/vr/instructions-and-forms-for-amending-sex-on-birth-certificate-12_2023.pdf?rev=e2d9e5ffd e474d20bc2cf17811464781&hash=F0CCFF834F103DA8788EDD64F62C7FA0 (last visited May 14, 2025); District of Columbia, *see* Gender Designation Application, DC HEALTH CTR. FOR POL'Y PLANNING &

## II.    Background

Plaintiffs in this case are Ínaru Nadia de la Fuente Díaz, Maru Rosa Hernández, André Rodil, Yelvy Vélez Bartolomei, Gé Castro Cruz, and Deni Juste (collectively "Plaintiffs"). On October 27, 2023, Plaintiffs filed this action against the Governor of Puerto Rico, the Secretary of the Department of Health of Puerto Rico, and the Director of the Division of Demographic Registry and Vital Statistics of Puerto Rico (the "Demographic Registry"), each in their official capacities (collectively "Defendants"). (**ECF 1**).[2] Plaintiffs twice amended their complaint, filing the operative Complaint on

---

EVALUATION – VITAL RECS. DIV., https://dchealth.dc.gov/sites/default/files/dc/sites/doh/page_content/attachments/Gender%20Designation%20Application_0.pdf (last visited May 14, 2025); Illinois, *see* Gender Reassignment, DEP'T OF PUB. HEALTH, https://dph.illinois.gov/topics-services/birth-death-other-records/birth-records/gender-reassignment.html (last visited May 14, 2025); Maine, *see* Application to Change the Name and/or Sex on a Record of Live Birth to Support Gender Identity, DEP'T OF HEALTH & HUM. SERVS., https://www.maine.gov/dhhs/mecdc/public-health-systems/data-research/vital-records/documents/pdf-files/Gender%20Marker%20Change.pdf (last visited May 14, 2025); Michigan, *see* State of Michigan Sex Designation Form, DIV. FOR VITAL RECS. & HEALTH STATS., https://www.michigan.gov/-/media/Project/Websites/mdhhs/Folder3/Folder17/Folder217/Sex_Designation_Application.pdf?rev=950cb2ba5384449c9101d4b77e9dc22a (last visited May 14, 2025); Nevada, *see* Application for Correction of a Record, DIV. OF PUB. & BEHAVIORAL HEALTH, https://dpbh.nv.gov/uploadedFiles/dpbh.nv.gov/content/Programs/BirthDeath/dta/Forms/Affidavit%20Corrections%20Packet.pdf (last visited May 14, 2025); Amending or Correcting a Birth Certificate, DIV. OF PUB. & BEHAVIORAL HEALTH, https://dpbh.nv.gov/uploadedFiles/dpbh.nv.gov/content/Programs/BirthDeath/dta/Forms/Corrections%20-%20Instructions%20Packet%20-%20Corrections.pdf (last visited May 14, 2025); New Jersey, *see* N.J.S.A. 26:8-40.12; New Mexico, *see* N.M.S.A. § 24-14-25; Ohio, *see* Changing or Correcting a Birth Record, DEP'T OF HEALTH, https://odh.ohio.gov/know-our-programs/vital-statistics/changing-correcting-birth-record (last visited May 14, 2025); Oklahoma, *see Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024); Oregon, *see* Change Birth Record to Support Gender Identity, HEALTH AUTHORITY, https://www.oregon.gov/oha/PH/BIRTHDEATHCERTIFICATES/Pages/ChangeBirthSupportGenderIdentity.aspx#:~:text=Name%20and%20Sex%20Designation,to%20get%20a%20court%20order. (last visited May 14, 2025); Rhode Island, *see* Office of Vital Records Requirements and Fees for Changes to Birth, Marriage, or Death Records, DEP'T OF HEALTH, https://health.ri.gov/sites/g/files/xkgbur1006/files/2025-01/RI-Vital-Records-Correction-and-Amendment-Requirements.pdf (last visited May 14, 2025); Vermont, *see* Affidavit of Gender Identity, DEP'T OF HEALTH, https://www.healthvermont.gov/sites/default/files/documents/pdf/HS-VR-Gender-Identity-Affidavit-withFormFields.pdf (last visited May 14, 2025); and Washington, *see* Request to Change Sex Designation on a Birth Certificate for an Adult, DEP'T OF HEALTH, https://doh.wa.gov/sites/default/files/legacy/Documents/Pubs/422-143-SexDesignationChangeAdult.pdf (last visited May 14, 2025). *See also, generally,* Movement Advancement Project, *Identity Document Laws and Policies,* http://www.lgbtmap.org/equality-maps/identity_document_laws (last visited May 30, 2025).

[2]    When the Complaint was filed, the Honorable Pedro Pierluisi Urrutia was the Governor of Puerto Rico and Dr. Carlos Mellado López was the Secretary of the Department of Health. Both officers were automatically substituted as parties to this action upon the installment of a new gubernatorial administration on January 2, 2025. FED. R. CIV. P. 25(d); (**ECF 52 at 2 n.1**). Governor Pierluisi has been

November 15, 2023. (**ECF 12**) ("the Complaint").

Plaintiffs' Complaint seeks injunctive and declaratory relief pursuant to 42 U.S.C. Section 1983 for violations of Plaintiffs' rights under the United States Constitution. (**Id.**). Specifically, Plaintiffs challenge the constitutionality of Puerto Rico's current practice of allowing individuals with a binary gender identity to correct the gender marker on their birth certificates to align with their true gender identity (either from male to female, or from female to male), while not allowing nonbinary individuals (individuals whose gender identity is neither male nor female) to do the same (hereinafter, the "Birth Certificate Policy").

### A.   From *Arroyo González v. Rosselló Nevares* (2018) to the Present

To understand Puerto Rico's current birth certificate policy and Plaintiffs' requested changes to that policy, it is necessary to provide a brief historical and procedural background. Plaintiffs seek to build on the 2018 landmark decision from this District reached by the Honorable Judge Carmen C. Cerezo in *Arroyo González v. Rosselló Nevares*,[3] wherein the court ordered the Demographic Registry to permit transgender individuals to amend the gender marker on their birth certificate, either from "male" to "female" or from "female" to "male." 305 F. Supp. 3d 327, 334 (D.P.R. 2018).[4] The court specified that the process created by the Demographic Registry must ensure

---

substituted by the current Governor of Puerto Rico, Jenniffer González Colón. Dr. Mellado López has been substituted by the current Secretary of the Department of Health, Dr. Victor Ramos Otero. Both are sued in their official capacities. (**ECF 1, 12**).

[3]   The present issue before the Court, regarding nonbinary individuals, was not presented to or decided by the *Arroyo* court. The holding in that case was premised on a constitutional right to informational privacy, which is not implicated in the instant case.

[4]   Specifically, the court ordered that the new application form be based on a form already created by the Department of Transportation and Public Works, through which individuals could apply to change the gender marker on their drivers' licenses and state identification cards. *Id.* at 335. The Department of Transportation form required individuals to select whether they wanted to change the gender marker on their license to "Female" or "Male," without an option for a nonbinary gender marker. *Id.* at Attachment A (Form DTOP-DIS-324).

that the original birth certificate be kept in a sealed file in the Registry.[5]

Pursuant to the court's order, the Demographic Registry then created a protocol by which transgender individuals could request to correct the gender marker on their birth certificates from either "Male" to "Female" or from "Female" to "Male." (**ECF 12 at 2 ¶ 4**); (**ECF 29 at 3 ¶¶ 4, 5**); (**ECF 12-1**). The current protocol requires an applicant to submit a designated form ("Application for Gender Change") along with either: a Driver's license reflecting the individual's true gender, a passport reflecting their true gender, or a certification of the applicant's true gender issued by a professional who has a physician-patient relationship with the applicant. (**ECF 12-1**); *see also Arroyo*, 305 F. Supp. 3d at 335.

Article 694 of the Puerto Rico Civil Code, in turn, provides that, except under limited circumstances which are not implicated by this case, "[a]mendments to a person's sex at birth cannot be authorized in the *original* birth record." 31 L.P.R.A. § 7655 (2020) (emphasis added).[6] The Article further clarifies that:

Nothing set forth herein detracts from the process established for requesting a

---

[5]　Specifically, the court ordered that the process must mirror the process which already existed for issuing an amended birth certificate in the case of adoptions under 24 L.P.R.A. § 1136. *Arroyo*, 305 F. Supp. 3d at 334. The relevant statute, in place in Puerto Rico since 1931, reads:

> If the birth of an adoptee had previously been registered in the Vital Statistics Registry, **the registration certificate of such birth shall be substituted for another showing the new legal status** of the registered minor, as if he were a legitimate child of the adopters; **Provided, That the original birth certificate** of the adoptee, the judgment of the court, and other documents **shall be kept in the Registry in a sealed envelope and shall be confidential documents.** No registration certificate issued by the Registry shall contain data from the original registration, unless the petitioner of said certificate has expressly requested the showing of such facts and a competent court has so ordered for justified causes. Provided, That such authorization shall not be required when the applicant is the adopter or the adoptee.

24 L.P.R.A. § 1136 (emphasis added) (official translation).

[6]　Translation provided by an official interpreter certified by the Administrative Office of the United States Courts, in accordance with District of Puerto Rico Local Rule 5(c)(1)). The statute provides a narrow exception in cases "in which medical experts determine that there is an ambiguity regarding the original sex at birth, and that fact is recorded in the Demographic Registry[.]" 31 L.P.R.A. § 7655. This exception merely reflects the factual reality that some children are born intersex or with ambiguous biological sex characteristics. In such cases, a court may order the substitution of the original birth record. This exception is not implicated by the facts of this case.

> gender change in the birth certificate. These applications shall be accompanied by a passport, driver's license or a certification issued by a health professional who has a doctor-patient relationship with the applicant attesting to the gender. In these cases, the Registry shall issue the certificate, safeguarding privacy rights.

*Id.* In short, Puerto Rico law permits individuals to amend the gender marker on their birth certificates if certain procedural requirements are met, yet requires that the *original* birth certificate be maintained without modification.

Plaintiffs in the instant case now seek an Order requiring the Demographic Registry to amend its Application for Gender Change form to include a third gender marker, an "X," for those individuals whose gender identity is nonbinary. (**ECF 12 at 20 ¶ d–21 ¶ e**). Plaintiffs also seek a writ of mandamus compelling Defendants to immediately process their applications to amend their birth certificates. (**Id. at 21 ¶ f**). The parties agreed that there were no factual disputes in the case such that there was no need to conduct discovery. (**ECF 33**). On September 6, 2024, Plaintiffs filed their Motion for Summary Judgment. (**ECF 36**) ("Plaintiffs' Motion"). Defendants filed their Opposition to Plaintiffs' Motion for Summary Judgment and Cross Motion for Summary Judgment on January 10, 2025. (**ECF 52**).

The Court now holds that there is no rational basis for the classification between binary and nonbinary individuals created by the Birth Certificate Policy, and that the Policy therefore violates the Equal Protection Clause.[7] Plaintiffs' Motion for Summary Judgment is therefore **GRANTED**.

---

[7] The Complaint also alleges that the Birth Certificate Policy violates the First Amendment of the United States Constitution (**ECF 12 at 18–19**), as well as the substantive due process clause of the Fourteenth Amendment (**Id. at 16–18**). Under the doctrine of constitutional avoidance, federal courts must avoid deciding "constitutional issues where alternative grounds for resolution are available." *Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013); *see also Mills v. Rogers*, 457 U.S. 291, 305 (1982) ("It is this Court's settled policy to avoid unnecessary decisions of constitutional issues."). Because summary judgment for the Plaintiff is warranted under the Equal Protection Clause of the Fourteenth Amendment, the Court declines to reach the remaining constitutional issues.

### III.    Findings of Fact

In making the below findings of fact, the Court analyzed Plaintiffs' Amended Complaint (**ECF 12**), Defendants' Answer to the Amended Complaint (**ECF 29**), Plaintiffs' Motion for Summary Judgment (**ECF 36**), Defendants' Memorandum in Opposition to Summary Judgment and Cross Motion for Summary Judgment (**ECF 52**), all exhibits and attachments to these filings, and the totality of the record.

1. Plaintiffs are persons living in Puerto Rico who are nonbinary. (**ECF 36 at 4 ¶ 8 − 5 ¶ 13**); (**ECF 52-2 at 3 ¶ 8 − 4 ¶ 13**).

2. Gender identity is a person's internal sense of their own gender. (**ECF 36 at 5 ¶ 18**); (**ECF 52-2 at 5 ¶ 18**).

3. Individuals whose gender identity is either "male" or "female" have a binary gender identity. Individuals whose gender identity is neither male nor female have a nonbinary gender identity. (**ECF 36 at 5 ¶ 16**); (**ECF 52-2 at 5 ¶ 16**).

4. The Demographic Registry has a protocol by which individuals can request to correct the gender marker on their birth certificates. (**ECF 12-1**); (**ECF 12 at 2 ¶ 4**); (**ECF 29 at 3 ¶¶ 4, 5**). This protocol consists of submitting an application form ("Application for Gender Change") along with either: a Driver's license, a passport, or a certification issued by a health or behavioral professional who has a physician-patient relationship with the applicant. (**ECF 12-1**).

5. The current Application for Gender Change form includes only two possible gender markers, "Female" and "Male," and does not include an X or any other gender marker. (**ECF 12-1 at 2**); (**ECF 36 at 4 ¶¶ 2−3**); (**ECF 52-2 at 2 ¶¶ 2−3**).

6. Under the existing Birth Certificate Policy, it is possible for binary individuals to amend their birth certificates to reflect their true gender identity, but it is not possible for nonbinary individuals to do so. ("the Birth Certificate Policy"). (**ECF 12-1**); (**ECF 36 at 4 ¶ 7**); (**ECF 52-2 at 3 ¶ 7**).

### IV.    Applicable Law and Analysis

#### A.    Summary Judgment

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a); *White v. Hewlett Packard Enterprise Co.*, 985 F.3d 61, 68 (1st Cir. 2021). A dispute is "genuine" if a reasonable factfinder could resolve it in favor of either party. *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 7 (1st Cir. 2015). A fact is "material" if it has "the potential of affecting the outcome of the case." *Taite v. Bridgewater State Univ., Bd. of Trustees*, 999 F.3d 86, 93 (1st Cir. 2021). Both Plaintiffs and Defendants may move for summary judgment, and the filing of cross-motions for summary judgment does not alter the standard set by Rule 56, but "simply require[s] [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Group, Inc. v. Ferre Dev't, Inc.*, 241 F.3d 103, 107 (1st Cir. 2001). At the summary judgment stage, the Court must review the record as a whole and avoid gauging the weight of the evidence presented. *Pina v. Children's Place*, 740 F.3d 785, 802 (1st Cir. 2014).

## B.   Equal Protection

Plaintiffs claim that the Birth Certificate Policy violates their right to Equal Protection under the Fourteenth Amendment of the U.S. Constitution. (**ECF 12 at 13–16**).[8] The Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. It is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Courts typically conduct an Equal Protection analysis in cases where there exists a "disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." *See Ross v. Moffitt*, 417 U.S. 600, 609 (1974). Actions by state administrators are subject to the

---

[8]      Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983, which establishes "a private right of action for violations of federally protected rights." *Marrero-Gutiérrez v. Molina*, 491 F.3d 1, 5 (1st Cir. 2007). Puerto Rico is a state for purposes of Section 1983. *Deniz v. Mun. of Guaynabo*, 285 F.3d 142, 146 (1st Cir. 2002).

protections of the Equal Protection Clause. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 597 (2008) (citing *Raymond v. Chicago Union Traction Co.*, 207 U.S. 20, 35–36 (1907)).

### 1.    Classification and Scrutiny

When considering a challenge to a governmental policy under the Equal Protection Clause, courts apply different tiers of scrutiny based on the type of classification made by the challenged policy. The highest level of scrutiny, called "strict scrutiny," is reserved for the "suspect" classes of race, religion, and national origin. *City of Cleburne*, 473 U.S. at 440. Where the government classifies on any of those bases, it bears the burden of demonstrating that the classification is "narrowly tailored to further [a] compelling governmental interest[]." *See, e.g.*, *Fisher v. Univ. of Texas*, 570 U.S. 297, 310 (2013) (quoting *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003)). Sex, on the other hand, is considered a "quasi-suspect" classification subject to an "intermediate" level of scrutiny, meaning that classifications based on sex are constitutional only if "substantially related to achieving an important governmental objective." *Massachusetts v. U.S. Dep't of Health & Hum. Servs.*, 682 F.3d 1, 9 (1st Cir. 2012), 9 n.5 (collecting cases applying the same standard); *see also United States v. Virginia (VMI)*, 518 U.S. 515, 532–33 (1996). Other types of classifications are considered "non-suspect" and are subject to rational basis review, meaning the classification must "bear[] a rational relation to some legitimate" state interest. *Romer v. Evans*, 517 U.S. 620, 631 (1996). Moral disapproval of or animus towards a specific group are not considered legitimate state interests under the rational basis test. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 577-78 (2003); *Trump v. Hawaii*, 585 U.S. 667, 706 (2018).

It is undisputed that the Birth Certificate Policy creates a classification between

people with a binary gender identity, on the one hand, and nonbinary people, on the other. This classification is apparent from the face of the Application for Gender Change form, which provides an option for binary applicants to choose a gender marker which aligns with their true gender, but does not provide an option which would allow nonbinary individuals to do so. (**ECF 12-1 at 2**). Defendants concede that the Birth Certificate Policy creates a classification, but dispute what level of scrutiny should apply to this classification. (**ECF 52 at 21–23**). Defendants argue that in the absence of binding caselaw establishing that nonbinary people are part of a suspect or quasi-suspect class, this group of individuals should be considered a non-suspect class, entitled only to rational basis review. (**Id. at 21**). Plaintiffs, on the other hand, argue that any classification based on gender or gender identity falls within the category of discrimination based on sex, and is therefore subject to intermediate scrutiny. (**ECF 36 at 16**) (citing *Bostock v Clayton, Georgia*, 590 U.S. 644 (2020)).

It is well settled that sex-based discrimination is subject to intermediate scrutiny under the Equal Protection Clause. *VMI*, 518 U.S. at 532–33.  Although it is less clear where discrimination based on *gender identity* fits into the equation, a recent decision from our sister court in the District of Massachusetts found that discriminating against an individual because they are nonbinary necessarily constitutes discrimination based on sex. *Orr v. Trump*, 25-cv-10313, 2025 WL 1145271, at *9 (D. Mass. Apr. 18, 2025). Plaintiffs in that case seek to enjoin a recent federal policy requiring U.S. passports to reflect an individual's sex at birth, rather than their true gender identity. This policy change was made pursuant to an Executive Order and was hastily implemented only two days after the Order was signed, despite that binary transgender individuals have been permitted to amend the gender marker on their U.S. passports since 1992, and nonbinary

individuals have been permitted to change their gender marker to an "X" since 2021. *Id.* at \*2, \*4. The *Orr* court held that the new policy created a classification based on sex, both with regard to binary and nonbinary individuals, and was thus subject to intermediate scrutiny. *Id.* at \*9 ("the reversal of the availability of an "X" marker on passports . . . draws a classification based on sex."). The district court then issued an emergency preliminary injunction against the new policy, finding that plaintiffs have demonstrated a substantial likelihood that the new policy is unconstitutional under both the intermediate scrutiny and rational basis tests. *Id.* at \*12–13.

The *Orr* court is not alone in concluding that discrimination based on gender identity is entitled to intermediate scrutiny. Many courts have held, in a variety of contexts, that gender identity-based discrimination amounts to sex discrimination. *See, e.g., Bostock*, 590 U.S. at 660 (holding, in the Title VII context, that "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex); *Fowler v. Stitt,* 104 F.4th 770, 800 (10th Cir. 2024) (collecting federal cases "that have applied *Bostock's* reasoning to equal protection claims" to hold that gender-based discrimination is entitled to intermediate scrutiny); *F.V. v. Barron*, 286 F. Supp. 3d 1131, 1144 (D. Idaho 2018) ("to conclude discrimination based on gender identity or transsexual status is not discrimination based on sex is to depart from advanced medical understanding in favor of archaic reasoning."). Other courts have reached the same conclusion with respect to transgender people based on their unique characteristics as a group, concluding that the group makes up a quasi-suspect class. *See, e.g. Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 610–614 (4th Cir. 2020) (collecting cases applying a four-part test to conclude that transgender individuals 1) have been historically subject to discrimination, 2) are as capable as others

of contributing value to society, 3) possess common, immutable characteristics that define them as a discrete group, and 4) constitute a minority lacking political power).

The Court finds the reasoning of such cases highly persuasive. However, Defendants are correct that the First Circuit lacks binding caselaw regarding the status of nonbinary people under the Equal Protection Clause. Federal courts must avoid ruling on novel constitutional questions "where alternative grounds for resolution are available." *Am. Civil Liberties Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013). Since the Policy fails under even the lowest level of scrutiny, rational basis, the Court declines to decide now what level of scrutiny applies to the Birth Certificate Policy.

### 2. Puerto Rico's Birth Certificate Policy is not supported by a rational basis.

"In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *see also A.C. by Waithe v. McKee*, 23 F.4th 37, 46 (1st Cir. 2022). Plaintiffs who challenge the rationality of a government policy "have the burden to negate every conceivable basis that might support it." *F.C.C. v. Beach Commc'ns*, 508 U.S. at 315.

But while the rational basis standard is forgiving, it does still require that the Court be able to "ascertain some relation between the classification and the purpose it served." *Romer*, 517 U.S. at 633. "The search for the link between classification and objective gives substance to the Equal Protection Clause. . . . By requiring that the classification bear a rational relationship to an independent and legitimate legislative end, we ensure that

classifications are not drawn for the purpose of disadvantaging the group burdened by the law." *Id.* at 632–33. In other words, when state action cannot be explained by a legitimate state interest, it "rais[es] the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected." *Id.* at 634; *see also City of Cleburne*, 473 U.S. at 440 (policies will fail rational basis review if they "appear . . . to rest on an irrational prejudice" against a non-suspect class); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 530–34 (1973) (the "bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest."); *Trump v. Hawaii*, 585 U.S. at 706 (a challenged policy will fail rational basis review when a court cannot "discern a relationship" between the policy and a legitimate state interest or when the policy is "inexplicable by anything but animus."). Standing alone, "[m]oral disapproval of [a] group" is categorically "insufficient to satisfy rational basis review under the Equal Protection Clause." *Lawrence v. Texas*, 539 U.S. at 582 (O'Connor, J., concurring) (citing *U.S. Dep't of Agric. v. Moreno*, 413 U.S. at 534; *Romer*, 517 U.S. at 634–35).

Defendants have offered two purportedly legitimate interests in maintaining the Birth Certificate Policy. First, Defendants argue that "creating a new gender category, such as 'X,' without legislative approval undermines the separation of powers." (**ECF 52 at 21**). The separation of powers aspect of this argument is clearly misplaced, as it misunderstands the role of the federal courts in upholding the protections of the United States Constitution. It is "emphatically" the duty of the federal courts to strike down unconstitutional laws and policies created by state legislatures and administrative agencies. *See Marbury v. Madison*, 5 U.S. 137, 177–78 (1803); *see also, e.g., Starlight Sugar Inc. v. Soto*, 909 F. Supp. 853 (D.P.R. 1995) (applying a Fourteenth Amendment equal protection analysis to preliminarily enjoin a regulation propounded by a Puerto

Rico state agency), *aff'd*, 114 F.3d 330 (1st Cir. 1997). Federal courts regularly rule on the constitutionality of state and federal policies which target transgender and/or nonbinary individuals. *See e.g. Arroyo,* 305 F. Supp. 3d at 333*; Orr v. Trump,* 2025 WL 1145271, at *10; *Fowler v. Stitt,* 104 F.4th 770, 800 (10th Cir. 2024) (discussed *infra*); *Ray v. McCloud*, 507 F. Supp. 3d 925 (S.D. Ohio 2020) (permanently enjoining enforcement of a state policy which prohibited changes to gender markers on birth certificates, because the policy failed both intermediate scrutiny and rational basis); *F.V. v. Barron*, 286 F. Supp. 3d at 1146 (holding that a state policy of refusing to consider applications for gender marker changes on birth certificates failed both intermediate scrutiny and rational basis, and ordering state agencies to begin accepting such applications). Defendants have not explained why they believe the Policy challenged here is uniquely immune to judicial review. If accepted, Defendants' proposed "separation of powers" rationale would exempt every imaginable state statute from judicial review, no matter its unconstitutionality. Yet the Court's responsibility to exercise judicial review over the constitutionality of an existing government policy is "the very essence of judicial duty." *Marbury*, 5 U.S. at 178. The Court will not now shirk this duty.

Nor does the Court accept Defendants' framing of Plaintiffs' claim as a request to "creat[e] a new gender category." (**ECF 52 at 21**). Plaintiffs have not created a "new gender category," nor have they asked the Demographic Registry to do so. Nonbinary people exist, and many state and federal agencies across the country and the world have adopted the use of an "X" gender marker to reflect this reality. Defendants have conceded that nonbinary people exist, that the Plaintiffs in this case are nonbinary, and that "gender identity is a person's internal sense of their own gender." (**ECF 36 at 4 ¶ 8 − 5 ¶ 13, 5 ¶ 18**); (**ECF 52-2 at 3 ¶ 8 − 4 ¶ 13, 5 ¶ 18**). Since 2008, the Puerto Rican government has

prohibited discrimination based on "gender or gender identity" in the provision of public

services. OE-2008-57.[9] At least seventeen other states allow the gender marker on birth

certificates to be amended to reflect a nonbinary gender identity,[10] and at least twenty-

three states permit the same changes on drivers' licenses.[11] An "X" marker has been

---

[9]     Executive Order 2008-57 has been translated by an official interpreter certified by the Administrative Office of the United States Courts, in accordance with District of Puerto Rico Local Rule 5(c)(1). The relevant phrase in the original Spanish is "género o identidad de género."

[10]    *See* note 1, *supra.*

[11]    At the time of the publishing of this Opinion and Order, these states include: California, *see* Dep't of Motor Vehicles, *Change Your Name or Gender*, CA.GOV, https://www.ca.gov/departments/220/services/48/ (last visited May 30, 2025); Colorado, *see* Change of Sex Designation Instructions, DEP'T OF REVENUE, https://drive.google.com/file/d/1PeYZd7U43ar6Flg8lFAT1Etg1EPdLVUy/view (last visited May 30, 2025); Connecticut, *see* Gender Designation on a License or Identification Card, DEP'T OF MOTOR VEHICLES, https://portal.ct.gov/-/media/dmv/20/29/b-385.pdf?la=en (last visited May 30, 2025); District of Columbia, *see* Procedure for Establishing or Changing Gender Designation on a Driver License or Identification Card, DEP'T OF MOTOR VEHICLES, https://dmv.dc.gov/sites/default/files/dc/sites/dmv/publication/attachments/DC%20DMV%20Form%20Gender%20Self-Designation%20English.pdf (last visited May 30, 2025); Hawaii, *see* State of Hawaii Driver's License Application, DEP'T OF TRANSP., https://hidot.hawaii.gov/highways/files/2021/03/DL-Application-Form-Auto-VR-2023-03-15v1-fillable.pdf (last visited May 30, 2025); Illinois, *see* Gender Designation Change Form, OFFICE OF THE SEC'Y OF STATE, https://www.ilsos.gov/publications/pdf_publications/dsd_a329.pdf (last visited May 30, 2025); Maine, *see* Gender Designation Form, BUREAU OF MOTOR VEHICLES, https://www.maine.gov/sos/sites/maine.gov.sos/files/content/assets/GENDER-20DESIGNATION-20FORM.pdf (last visited May 30, 2025); Maryland, *see* Motor Vehicle Administration, *Changing Gender Designation*, DEP'T OF TRANSP., https://mva.maryland.gov/about-mva/Pages/changing-gender.aspx (last visited May 30, 2025); Massachusetts, *see* Driver's License, Learner's Permit, or ID Card Application, REGISTRY OF MOTOR VEHICLES, https://www.mass.gov/doc/license-and-id-application/download (last visited May 30, 2025); Michigan, *see* Michigan Secretary of State Sex Designation Form, SEC'Y OF STATE, https://www.michigan.gov/-/media/Project/Websites/sos/34lawens/MDOS_Sex_designation_form.pdf?rev=604b6da934c942eeb160e5ad699877f6 (last visited May 30, 2025); Minnesota, *see* Minnesota Driver's License/Instruction Permit/Identification Card Application, DEP'T OF PUB. SAFETY, https://s3.us-east-2.amazonaws.com/assets.dps.mn.gov/s3fs-public/PS33100-47%20JAN%202024.pdf (last visited May 30, 2025); Nevada, *see* Application for Driving Privileges or ID Card, DEP'T OF MOTOR VEHICLES, https://dmv.nv.gov/pdfforms/dmv002en.pdf (last visited May 30, 2025); New Hampshire, *see* Application for Driver License or Non-Driver ID Card, DEP'T OF SAFETY, https://www.dmv.nh.gov/sites/g/files/ehbemt416/files/inline-documents/dsmv450.pdf (last visited May 30, 2025); New Jersey, *see* Declaration of Gender Designation Change for New Jersey Motor Vehicle Commission Driver License or Non-Driver Identification Card, https://www.nj.gov/mvc/pdf/license/genderchange.pdf (last visited May 30, 2025); New Mexico, *see* Request for Sex Designation Change, TAX'N & REVENUE DEP'T, https://www.mvd.newmexico.gov/wp-content/uploads/2020/12/mvd10237.pdf (last visited May 30, 2025); New York, *see* Application for Permit, Driver License or Non-Driver ID Card, DEP'T OF MOTOR VEHICLES, https://dmv.ny.gov/forms/mv44.pdf (last visited May 30, 2025); Oregon, *see* Oregon Driver & Motor Vehicle Services, *Changing Your Gender Marker on Your Driver's License or ID Card*, OREGON.GOV, https://www.oregon.gov/ODOT/DMV/Pages/driverid/chg_gender_designation.aspx (last visited May 30, 2025); Pennsylvania, *see* Request for Gender Change on Driver's License/Identification Card, DEP'T OF TRANSP., https://www.dot.state.pa.us/public/dvspubsforms/BDL/BDL%20Form/DL-32.pdf (last visited May 30, 2025); Rhode Island, *see* Div. of Motor Vehicles, License/ID/Permit Application (LI-1 Form), DEP'T OF REVENUE, https://dmv.ri.gov/licenses-permits-ids/drivers-licenses/name-address-change (last visited May 30, 2025); Utah, *see* Driver License Division, Apply, DEP'T OF PUB. SAFETY,

permitted on U.S. passports since 2021, and recent attempts to reverse that policy were enjoined by a federal court on an emergency basis. *Orr*, 2025 WL 1145271, at \*2, \*25. Even in the absence of specific statutory language regarding nonbinary individuals, courts have interpreted statutes as implying the existence and rights of nonbinary people. *Matter of Hollister*, 305 Or. App. 368, 372 (Or. App. Ct. 2020) (ordering state government to process an individual's legal sex change from female to nonbinary, based on a textual interpretation of an Oregon statute which did not include the term nonbinary but did include the term "gender identity," because it is "well understood" that the term "nonbinary" encompasses the "gender identity" of those "who identif[y] as neither entirely male nor entirely female"). Defendants' argument that "creating a new gender category . . . without legislative approval undermines the separation of powers" therefore fails, both because the gender category of nonbinary is not new, and because ruling on the constitutionality of state action is the responsibility of this Court.

Defendants next argue that the Puerto Rican government "has an interest in maintaining the integrity of public records." (**ECF 52 at 22**). In this, the Court agrees. But it is uncontested that an existing scheme is already in place to protect the integrity of vital records in circumstances where a birth certificate has been amended. Since 1931, Puerto Rico law has provided that in the case of adoptions, an amended birth certificate may be issued bearing the names of the adoptive parents "[p]rovided, that the original

---

https://dldapply.ps.utah.gov/?appt=id-card#apply (last visited May 30, 2005); Vermont, *see* Application for License/Permit, Dep't of Motor Vehicles, https://dmv.vermont.gov/sites/dmv/files/documents/VL-021-License_Application.pdf (last visited May 30, 2005); Virginia, *see* Driver's License and Identification Card Application, Dep't of Motor Vehicles, https://www.dmv.virginia.gov/sites/default/files/forms/dl1p.pdf (last visited May 30, 2025); and Washington, *see* Change of Gender Designation, Dep't of Licensing, https://dol.wa.gov/forms/view/520043/download?inline (last visited May 30, 2025). *See also, generally,* Movement Advancement Project, *Identity Document Laws and Policies*, http://www.lgbtmap.org/equality-maps/identity_document_laws (last visited May 30, 2025).

birth certificate of the adoptee, the judgment of the court, and other documents shall be kept in the Registry in a sealed envelope and shall be confidential documents." 24 L.P.R.A. § 1136 (official translation). Following the *Arroyo* decision in 2018, the Demographic Registry is required to utilize this same process for preserving original birth certificates when the gender marker has been amended. *Arroyo*, 305 F. Supp. 3d at 335; *see also* 31 L.P.R.A. § 7655 (prohibiting alterations to original birth certificates).

Thus, while Puerto Rico may have a legitimate state interest in maintaining accurate records of its citizens' sex at birth, Defendants have failed to articulate why this particular interest is furthered by treating nonbinary individuals differently than binary individuals. This exact issue was recently discussed and decided by the Tenth Circuit in *Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024). Prior to 2021, Oklahoma permitted its citizens to amend the gender marker on their birth certificates, including to a nonbinary designation. *Id.* at 777. In April 2022, the then-Governor of Oklahoma signed a law prohibiting the use of "any symbol representing a nonbinary designation including but not limited to the letter 'X'" on a birth certificate. *Id.* The plaintiffs in that case brought suit to challenge the constitutionality of the new law. In that case, as here, the defendants argued that the challenged policy was necessary to support the state's interest in "the accuracy of its own vital statistics recording facts about birth." *Id.* at 795. Yet the *Fowler* Court found that this interest, though legitimate, was not rationally related to the challenged policy because "Plaintiffs want amended birth certificates for their own use— they are not trying to prevent Oklahoma from keeping and then later accessing *original* birth certificates." *Id.* (emphasis added). The court went so far as to call the state's purported interest a "non sequitur." *Id.* Because Oklahoma already had a protocol for retaining original birth certificates after they were amended for adoption purposes, the

**17**

court found the policy was not rationally related to the defendants' asserted interest in preserving the accuracy of vital statistics. *Id.* (citing 63 Okl. St. Ann. § 1-316, the Oklahoma statute which provides that in the case of adoptions, amended birth certificates may be issued but the original birth certificate "shall not be amended").

Such is the case here. It is not disputed that Puerto Rico has a legitimate interest in recording facts about its citizens at birth and maintaining accurate vital records. But here, as in *Fowler*, the Commonwealth already has existing processes in place to retain original birth certificates in cases where a birth certificate has been subsequently amended. Plaintiffs do not seek to alter or eliminate these processes, nor do they seek to prevent the Commonwealth from recording and thereafter storing vital statistics. Quite the opposite: Plaintiffs here, as in *Fowler*, "merely want amended birth certificates for their own use that do not require any changes to the original records kept by the state." *Fowler*, 104 F.4th at 795. Defendants' argument regarding the maintenance of records is, as in *Fowler*, a "non sequitur." *Id.*

Because the Court cannot conceive of any rational basis for the Policy's current distinction between binary and nonbinary individuals, we are forced to make "the inevitable inference that the [classification] is born of animosity toward the class of persons affected." *Romer*, 517 U.S. at 634. Yet, as explained above, the entire purpose of the rational basis framework is to separate classifications based on *legitimate* state interests from those based on disapproval of or "irrational prejudice" against a non-suspect class. *City of Cleburne*, 473 U.S. at 440; *see also Romer*, 517 U.S. at 632–33 ("The search for the link between classification and objective gives substance to the Equal Protection Clause."). The rational basis framework was developed to ensure that when a government policy draws a classification, it does so for a reason other than "the purpose

**18**

of disadvantaging the group burden by the law." *Romer*, 517 U.S. at 632–33. Simply put, "[m]oral disapproval of [a] group, like a bare desire to harm the group, is an interest that is insufficient to satisfy rational basis review under the Equal Protection Clause." *Lawrence v. Texas*, 539 U.S. at 582 (citing *U.S. Dep't of Agric. v. Moreno*, 413 U.S. at 534; *Romer*, 517 U.S. at 634–35).

## V.    Conclusion

Puerto Rico's current Birth Certificate Policy is not supported by a rational basis, and therefore violates the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs' Motion for Summary Judgment is therefore **GRANTED** and Defendants' Cross Motion for Summary Judgment is **DENIED**. Defendants are hereby **ORDERED** to promptly amend their Application for Gender Change form to include an option to select an "X" as one's gender marker on their birth certificate. Plaintiffs' request for a Writ of Mandamus is **DENIED**; Plaintiffs shall wait for the new application form to become available and shall follow the process established therein.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of May, 2025.

*/s/* **María Antongiorgi-Jordán**
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**

**19**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| ÍNARU NADIA DE LA FUENTE DÍAZ, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civ. No. 23-01544 (MAJ) |
| JENNIFFER GONZÁLEZ COLÓN, *et al.*, | |
| *Defendants*. | |

## JUDGMENT

In accordance with the Opinion and Order entered on May 30, 2025 (**ECF No. 59**), judgment is entered **DISMISSING** this action **WITH PREJUDICE** in its entirety without the imposition of costs or attorneys' fees.

This case is now closed for statistical purposes.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of June, 2025.

/s/ María Antongiorgi-Jordán
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**

**20**

Query   Reports   Utilities   Help   Log Out

APPEAL,CASECLOSED

# United States District Court
# District of Puerto Rico (San Juan)
# CIVIL DOCKET FOR CASE #: 3:23-cv-01544-MAJ

de-la-Fuente-Diaz et al v. Pierluisi et al
Assigned to: Judge Maria Antongiorgi-Jordan
Case in other court: 25-01638
Cause: 42:1983 Civil Rights Act

Date Filed: 10/27/2023
Date Terminated: 06/02/2025
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Inaru Nadia de-la-Fuente-Diaz**

represented by **Johanna M. Emmanuelli-Huertas**
94 Calle Ponce
San Juan, PR 00917
787-342-6499
Email: jmeh@poalaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Maru Rosa Hernandez**

represented by **Johanna M. Emmanuelli-Huertas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Andre Rodil**

represented by **Johanna M. Emmanuelli-Huertas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Yeivy Velez-Bartolomei**

represented by **Johanna M. Emmanuelli-Huertas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ge Castro-Cruz**

represented by **Johanna M. Emmanuelli-Huertas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Deni Juste**

represented by **Johanna M. Emmanuelli-Huertas**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**21**

**Pedro Pierluisi**
*in his official capacity as Governor of the Commonwealth of Puerto Rico*

represented by **Diana Itzel Perez-Carlo**
Puerto Rico Department of Justice
Federal Division
Street Teniente Cesar Gonzalez 677
Ave. Jesus T. Pinero
San Juan, PR 00902-0192
Puerto Rico
(787) 224-4198
Email: diana.perez@justicia.pr.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Carlos R Mellado-Lopez**
*in his official capacity as Secretary of the Department of Health of the Commonwealth*

represented by **Diana Itzel Perez-Carlo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Wanda Llovet-Diaz**
*in her official capacity as the Director of the Division of Demographic Registry and Vital Statistics of the Commonwealth*

represented by **Diana Itzel Perez-Carlo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/27/2023 | 1 | COMPLAINT against Wanda Llovet Diaz, Carlos R Mellado Lopez, Pedro Pierluisi, filed by Deni Juste, Andre Rodil, Maru Rosa Hernandez, Yeivy Velez Bartolomei, Inaru Nadia de la Fuente Diaz, Ge Castro Cruz. Service due by 1/25/2024, (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Summons Pierluisi, # 11 Summons Mellado, # 12 Summons Llovet, # 13 Civil Cover Sheet, # 14 Category Sheet)(Emmanuelli-Huertas, Johanna) (Entered: 10/27/2023) |
| 10/27/2023 | 2 | Payment of Electronic Filing Fee( Filing fee $402 receipt number APRDC-8426758.) re 1 Complaint,, filed by Andre Rodil, Inaru Nadia de la Fuente Diaz, Ge Castro Cruz, Deni Juste, Maru Rosa Hernandez, Yeivy Velez Bartolomei, filed by Deni Juste, Andre Rodil, Maru Rosa Hernandez, Yeivy Velez Bartolomei, Inaru Nadia de la Fuente Diaz, Ge Castro Cruz. Related document: 1 Complaint,, filed by Andre Rodil, Inaru Nadia de la Fuente Diaz, Ge Castro Cruz, Deni Juste, Maru Rosa Hernandez, Yeivy Velez Bartolomei. (Emmanuelli-Huertas, Johanna) (Entered: 10/27/2023) |
| 10/27/2023 | 3 | MOTION for Preliminary Injunction *and Brief in Support Thereof* filed by Johanna M. Emmanuelli-Huertas on behalf of Ge Castro Cruz, Deni Juste, Andre Rodil, Maru Rosa Hernandez, Yeivy Velez Bartolomei, Inaru Nadia de la Fuente Diaz Responses due by 11/13/2023. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Emmanuelli-Huertas, Johanna) (Entered: 10/27/2023) |
| 10/30/2023 | 4 | NOTICE OF JUDGE ASSIGNMENT: Case has been assigned to Judge Maria Antongiorgi-Jordan. (arg) (Entered: 10/30/2023) |
| 10/30/2023 | 5 | AMENDED COMPLAINT against All Defendants, filed by Deni Juste, Maru Rosa Hernandez, Yeivy Velez Bartolomei, Inaru Nadia de la Fuente Diaz, Ge Castro Cruz. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Affidavit, # 5 Affidavit, # 6 |

| | | |
|---|---|---|
| | | Affidavit, # 7 Affidavit, # 8 Affidavit, # 9 Affidavit)(Emmanuelli-Huertas, Johanna) (Entered: 10/30/2023) |
| 10/30/2023 | 6 | Summons Issued as to Wanda Llovet Diaz, Carlos R Mellado Lopez, Pedro Pierluisi. Note: Counsel must print all summonses and follow the service requirements set forth by the Rules of Civil Procedure. Electronic issuance of summonses should not be construed as authorizing electronic service. (arg) (Entered: 10/30/2023) |
| 11/06/2023 | 7 | SUMMONS Returned Executed by Deni Juste, Andre Rodil, Maru Rosa Hernandez, Yeivy Velez-Bartolomei, Inaru Nadia de-la-Fuente-Diaz, Ge Castro-Cruz upon Pedro Pierluisi served on 11/3/2023, answer due 11/27/2023. (Emmanuelli-Huertas, Johanna) (Entered: 11/06/2023) |
| 11/06/2023 | 8 | SUMMONS Returned Executed by Deni Juste, Andre Rodil, Maru Rosa Hernandez, Yeivy Velez-Bartolomei, Inaru Nadia de-la-Fuente-Diaz, Ge Castro-Cruz upon Carlos R Mellado-Lopez served on 11/3/2023, answer due 11/27/2023. (Emmanuelli-Huertas, Johanna) (Entered: 11/06/2023) |
| 11/06/2023 | 9 | SUMMONS Returned Executed by Deni Juste, Andre Rodil, Maru Rosa Hernandez, Yeivy Velez-Bartolomei, Inaru Nadia de-la-Fuente-Diaz, Ge Castro-Cruz upon Wanda Llovet-Diaz served on 11/3/2023, answer due 11/27/2023. (Emmanuelli-Huertas, Johanna) (Entered: 11/06/2023) |
| 11/09/2023 | 10 | MOTION for Leave to File Document *Second Amended Complaint* filed by Johanna M. Emmanuelli-Huertas on behalf of All Plaintiffs Responses due by 11/27/2023. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Emmanuelli-Huertas, Johanna) (Entered: 11/09/2023) |
| 11/13/2023 | 11 | ORDER granting: 10 "Motion for Leave to File Second Amended Complaint." Signed by Judge Maria Antongiorgi-Jordan on 11/13/2023. (ao) (Entered: 11/13/2023) |
| 11/15/2023 | 12 | AMENDED COMPLAINT against All Plaintiffs, filed by Deni Juste, Andre Rodil, Maru Rosa Hernandez, Yeivy Velez-Bartolomei, Inaru Nadia de-la-Fuente-Diaz, Ge Castro-Cruz. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Affidavit, # 6 Affidavit, # 7 Affidavit, # 8 Affidavit, # 9 Affidavit)(Emmanuelli-Huertas, Johanna) (Entered: 11/15/2023) |
| 11/22/2023 | 13 | NOTICE of Appearance and MOTION for Extension of Time until December 22, 2023, to File Answer or Otherwise Plead filed by Diana Itzel Perez-Carlo on behalf of Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi Responses due by 12/6/2023. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Perez-Carlo, Diana) Modified on 11/27/2023 edit text title. (arg). (Entered: 11/22/2023) |
| 11/27/2023 | 14 | ORDER granting: 13 "Motion for Extension of Time until December 22, 2023 to File Answer or Otherwise Plead." Answer to Complaint due by 12/22/2023. Signed by Judge Maria Antongiorgi-Jordan on 11/27/2023. (ao) (Entered: 11/27/2023) |
| 12/21/2023 | 15 | Second MOTION for Extension of Time until January 22, 2024 to File Answer *or Otherwise Plead* filed by Diana Itzel Perez-Carlo on behalf of Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi Responses due by 1/4/2024. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Perez-Carlo, Diana) (Entered: 12/21/2023) |
| 12/22/2023 | 16 | ORDER granting: 15 "Second Motion for Extension of Time until January 22, 2024 to File Answer or Otherwise Plead." **Answer to Complaint due by 1/22/2024.** Signed by Judge Maria Antongiorgi-Jordan on 12/22/2023. (ao) (Entered: 12/22/2023) |

7/24/25, 10:25 AM
Case 3:23-cv-01638
Document: 00118338808
Page 81
District Court for Puerto Rico
Date Filed: 03/10/2025
Entry ID: 6750028

| 01/22/2024 | 17 | MOTION to Dismiss for Failure to State a Claim filed by Diana Itzel Perez-Carlo on behalf of Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi Responses due by 2/5/2024. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Perez-Carlo, Diana) (Entered: 01/22/2024) |
|---|---|---|
| 02/08/2024 | 18 | SCHEDULING ORDER/CASE MANAGEMENT ORDER: **Initial Scheduling Conference set for 3/14/2024 at 02:00 PM in Hato Rey Courtroom 2 before Judge Maria Antongiorgi-Jordan. Joint Initial Scheduling Memorandum due by 3/7/2024. The filing of a Motion to Dismiss will not stay discovery. Defendants shall file an Answer to the Complaint and Response to the Motion for Preliminary Injunction by 3/8/2024.** Signed by Judge Maria Antongiorgi-Jordan on 2/8/2024. (ao) (Entered: 02/08/2024) |
| 02/13/2024 | 19 | First MOTION for extension of time until March 5 to Oppose Mt for Dismissal filed by Johanna M. Emmanuelli-Huertas on behalf of All Plaintiffs Responses due by 2/27/2024. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Emmanuelli-Huertas, Johanna) (Entered: 02/13/2024) |
| 02/13/2024 | 20 | ORDER granting: 19 "Motion for Extension of Time." **Opposition to Motion to Dismiss due by 3/5/2024. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically.** Signed by Judge Maria Antongiorgi-Jordan on 2/13/2024. (ao) (Entered: 02/13/2024) |
| 03/05/2024 | 21 | MOTION to Amend/Correct Re: 18 Scheduling Order/Case Management Order, filed by Johanna M. Emmanuelli-Huertas on behalf of All Plaintiffs Responses due by 3/19/2024. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Related document(s) 18 ) (Emmanuelli-Huertas, Johanna) (Entered: 03/05/2024) |
| 03/05/2024 | 22 | Second MOTION for Extension of Time to File Response/Reply *until March 20* as to 17 MOTION to Dismiss for Failure to State a Claim filed by Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi filed by Johanna M. Emmanuelli-Huertas on behalf of All Plaintiffs Responses due by 3/19/2024. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Related document(s) 17 ) (Emmanuelli-Huertas, Johanna) (Entered: 03/05/2024) |
| 03/05/2024 | 23 | ORDER granting: 22 "Second Motion for Extension of Time." **Reply due by 3/20/2024. No further extensions will be granted.** Signed by Judge Maria Antongiorgi-Jordan on 3/5/2024. (ao) (Entered: 03/05/2024) |
| 03/07/2024 | 24 | ORDER granting: 21 "Motion for Rescheduling of Scheduling Conference." **Scheduling Conference reset for 3/14/2024 at 4:30 PM in Hato Rey Courtroom 2 before Judge Maria Antongiorgi-Jordan.** Signed by Judge Maria Antongiorgi-Jordan on 3/7/2024. (ao) (Entered: 03/07/2024) |
| 03/07/2024 | 25 | JOINT INITIAL SCHEDULING MEMORANDUM filed by Diana Itzel Perez-Carlo on behalf of All Plaintiffs and All Defendants. Responses due by 3/21/2024. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Perez-Carlo, Diana) Modified on 3/7/2024 correct event, terminate motion, edit text title and add filers. (arg). (Entered: 03/07/2024) |
| 03/08/2024 | 26 | MOTION for Extension of Time until March 18, 2024 to File Answer *to Complaint and Response to Preliminary Injunction* filed by Diana Itzel Perez-Carlo on behalf of Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi Responses due by 3/22/2024. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Perez-Carlo, Diana) (Entered: 03/08/2024) |

| 03/08/2024 | 27 | ORDER granting: 26 "Motion for Extension of Time to File Answer to Complaint." Answer due by 3/18/2024. Signed by Judge Maria Antongiorgi-Jordan on 3/8/2024. (ao) (Entered: 03/08/2024) |
|---|---|---|
| 03/14/2024 | 31 | Minute Entry for proceedings held before Judge Maria Antongiorgi-Jordan: Initial Scheduling Conference held on 3/14/2024. Present were counsels Johanna Emmanuelli-Huertas on behalf of plaintiffs and Diana Perez-Carlos on behalf of defendants. The parties informed the Court of the status of the case and all outstanding issues. The Motion to Dismiss filed at Dkt. no. 17 was discussed. The Court informed that the motion will be addressed once it is fully briefed but the case cannot be stayed pending ruling on said motion and they should continue with discovery. The Court adopted the recommended discovery deadlines proposed by the parties in the Joint Initial Scheduling Memorandum filed at Dkt. No. 25 with additional settings: **Discovery to conclude by 6/28/2024. Dispositive Motions due by 7/31/2024. Response to Dispositive Motions due by 8/31/2024. A Status Conference is set for 7/8/2024 at 02:00 PM in Hato Rey Courtroom 2 before Judge Maria Antongiorgi-Jordan.** (Hearing held in Hato Rey Courtroom 2.) (mr) (Entered: 03/26/2024) |
| 03/18/2024 | 28 | MEMORANDUM in Opposition *to Request the Entry of Preliminary Injunction* filed by Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi Re: 3 MOTION for Preliminary Injunction *and Brief in Support Thereof* filed by Yeivy Velez-Bartolomei, Andre Rodil, Inaru Nadia de-la-Fuente-Diaz, Ge Castro-Cruz, Deni Juste, Maru Rosa Hernandez filed by Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi. (Perez-Carlo, Diana) (Entered: 03/18/2024) |
| 03/18/2024 | 29 | ANSWER to 5 Amended Complaint, filed by Diana Itzel Perez-Carlo on behalf of Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi.(Perez-Carlo, Diana) (Entered: 03/18/2024) |
| 03/20/2024 | 30 | MEMORANDUM in Opposition *to Dismissal* filed by All Plaintiffs Re: 17 MOTION to Dismiss for Failure to State a Claim filed by Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi filed by All Plaintiffs. (Emmanuelli-Huertas, Johanna) (Entered: 03/20/2024) |
| 07/03/2024 | 32 | ORDER: The Status Conference set for 7/8/2024 at 02:00 PM **WILL BE HELD in Hato Rey Courtroom 5** before Judge Maria Antongiorgi-Jordan. Signed by Judge Maria Antongiorgi-Jordan on 7/3/2024. (mr) (Entered: 07/03/2024) |
| 07/08/2024 | 33 | Minute Entry for proceedings held before Judge Maria Antongiorgi-Jordan: Status Conference held on 7/8/2024. Present were counsels Johanna Emmanuelli-Huertas on behalf of plaintiffs and Diana Perez-Carlos on behalf of defendants. The Court informed that an Opinion and Order on the 17 Motion to Dismiss will be filed in the next weeks. The parties informed that discovery in this case is not necessary. Attorney Emmanuelli-Huertas requested an extension of time until the end of August to file Dispositive Motions. The Court granted the request and the schedule was modified as follows: **Dispositive Motions due by 8/30/2024. Response to Dispositive Motions due by 9/30/2024. Replies and sur-replies will be allowed. They should be submitted without further Court authorization not later than five (5) days after filing of the motion they are responding to. A Pretrial Conference is set for 12/4/2023 at 01:30 PM in Courtroom 2 before Judge Maria Antongiorgi-Jordan.** (Hearing held in HR Courtroom 2.) (mr) (Entered: 07/17/2024) |
| 08/30/2024 | 34 | MOTION for Extension of Time until September 6 to file Mt. for Summary Judgment filed by Johanna M. Emmanuelli-Huertas on behalf of All Plaintiffs. Responses due by 9/13/2024. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Emmanuelli-Huertas, Johanna) (Entered: 08/30/2024) |

| 09/03/2024 | 35 | ORDER granting: [34] "Motion for Extension of Time to File Motion for Summary Judgment." **Motion due by 9/6/2024.** Signed by Judge Maria Antongiorgi-Jordan on 9/3/2024. (ao) (Entered: 09/03/2024) |
|---|---|---|
| 09/06/2024 | 36 | MOTION for Summary Judgment filed by Johanna M. Emmanuelli-Huertas on behalf of All Plaintiffs. Suggestions in Opposition to Summary Judgment due by 9/20/2024. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Emmanuelli-Huertas, Johanna) (Entered: 09/06/2024) |
| 09/20/2024 | 37 | MOTION for extension of time until October 21, 2024 to file Opposition to Motion for Summary Judgment filed by Diana Itzel Perez-Carlo on behalf of Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi. Responses due by 10/4/2024. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Perez-Carlo, Diana) (Entered: 09/20/2024) |
| 09/20/2024 | 38 | ORDER granting: [37] "Motion for Extension of Time to File Opposition to Motion for Summary Judgment." **Responsive pleading due by 10/21/2024.** Signed by Judge Maria Antongiorgi-Jordan on 9/20/2024. (ao) (Entered: 09/20/2024) |
| 09/23/2024 | 39 | ORDER DENYING: Plaintiffs' [3] "Motion for Preliminary Injunction" and DENYING: Defendants' [17] "Motion to Dismiss." See Opinion and Order attached. Signed by Judge Maria Antongiorgi-Jordan on 9/23/2024. (ao) (Entered: 09/23/2024) |
| 10/21/2024 | 40 | Second MOTION for extension of time until November 20, 2024 to file Opposition to Motion for Summary Judgment filed by Diana Itzel Perez-Carlo on behalf of Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi. Responses due by 11/4/2024. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Perez-Carlo, Diana) (Entered: 10/21/2024) |
| 10/22/2024 | 41 | ORDER granting: [40] "Motion for Extension of Time." **Responsive pleading due by 11/20/2024.** Signed by Judge Maria Antongiorgi-Jordan on 10/22/2024. (ao) (Entered: 10/22/2024) |
| 10/23/2024 | 42 | ORDER. **Pretrial Conference is RESET for 3/19/2025 at 2:00 PM in Hato Rey Courtroom 2 before Judge Maria Antongiorgi-Jordan.** Signed by Judge Maria Antongiorgi-Jordan on 10/23/2024. (ao) (Entered: 10/23/2024) |
| 11/20/2024 | 43 | Consent MOTION for extension of time until December 20, 2024 to file Opposition to Motion for Summary Judgment filed by Diana Itzel Perez-Carlo on behalf of Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi. Responses due by 12/4/2024. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Perez-Carlo, Diana) (Entered: 11/20/2024) |
| 11/21/2024 | 44 | ORDER granting: [43] "Consented Request for Extension of Time to File Opposition to Motion for Summary Judgment." Opposition to Motion for Summary Judgment due by 12/20/2024. Signed by Judge Maria Antongiorgi-Jordan on 11/21/2024. (ao) (Entered: 11/21/2024) |
| 12/20/2024 | 45 | Final MOTION for extension of time until January 10, 2025 to file Opposition to Motion for Summary Judgment filed by Diana Itzel Perez-Carlo on behalf of Pedro Pierluisi, Carlos R Mellado-Lopez, Wanda Llovet-Diaz. Responses due by 1/3/2025. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Perez-Carlo, Diana) (Entered: 12/20/2024) |
| 12/20/2024 | 46 | ORDER granting: [45] "Motion for Extension of Time." Opposition to Motion for Summary Judgment due by 1/10/2025. Signed by Judge Maria Antongiorgi-Jordan on 12/20/2024. (ao) (Entered: 12/20/2024) |

**26**

| 01/07/2025 | 47 | MOTION for extension of time filed by Johanna M. Emmanuelli-Huertas on behalf of All Plaintiffs. Responses due by 1/21/2025. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Emmanuelli-Huertas, Johanna) (Entered: 01/07/2025) |
|---|---|---|
| 01/08/2025 | 48 | ORDER granting: 47 "Motion for Extension of Time." Reply due by 1/23/2025. Sur-reply will be allowed. It should be filed by 1/29/2025. No further extensions will be granted. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. Signed by Judge Maria Antongiorgi-Jordan on 1/8/2025. (ao) (Entered: 01/08/2025) |
| 01/08/2025 | 49 | MOTION to Amend/Correct *First Motion for Extension of Time until 1/28/25* Re: 47 MOTION for extension of time filed by Yeivy Velez-Bartolomei, Andre Rodil, Inaru Nadia de-la-Fuente-Diaz, Ge Castro-Cruz, Deni Juste, Maru Rosa Hernandez filed by Johanna M. Emmanuelli-Huertas on behalf of All Plaintiffs. Responses due by 1/22/2025. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Related document(s) 47 ) (Emmanuelli-Huertas, Johanna) (Entered: 01/08/2025) |
| 01/08/2025 | 50 | ORDER granting: 49 "Motion to Amend/Correct First Motion for Extension of Time." Reply due by 1/28/2025. Sur-reply will also be allowed. Sur-reply due by 2/3/2025. No further extensions of time will be granted. Signed by Judge Maria Antongiorgi-Jordan on 1/8/2025. (ao) (Entered: 01/08/2025) |
| 01/10/2025 | 51 | MOTION for Leave to File Excess Pages filed by Diana Itzel Perez-Carlo on behalf of Pedro Pierluisi, Carlos R Mellado-Lopez, Wanda Llovet-Diaz. Responses due by 1/24/2025. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Perez-Carlo, Diana) (Entered: 01/10/2025) |
| 01/10/2025 | 52 | MEMORANDUM in Opposition *to Summary Judgment and Cross Motion for Summary Judgment* filed by Pedro Pierluisi, Carlos R Mellado-Lopez, Wanda Llovet-Diaz Re: 36 MOTION for Summary Judgment filed by Yeivy Velez-Bartolomei, Andre Rodil, Inaru Nadia de-la-Fuente-Diaz, Ge Castro-Cruz, Deni Juste, Maru Rosa Hernandez filed by Pedro Pierluisi, Carlos R Mellado-Lopez, Wanda Llovet-Diaz. (Attachments: # 1 Exhibit 1, # 2 Exhibit Response to Plaintiffs SUMF, # 3 Exhibit Additional SUMF)(Perez-Carlo, Diana) (Entered: 01/10/2025) |
| 01/10/2025 | 53 | ORDER granting: 51 "Motion for Leave to File Excess Pages." Signed by Judge Maria Antongiorgi-Jordan on 1/10/2025. (ao) (Entered: 01/10/2025) |
| 02/07/2025 | 54 | ***FILED IN ERROR*** ORDER: Due to calendar conflicts, Pretrial Conference is RESET for 4/4/2025 at 1:30 PM in Hato Rey Courtroom 2 before Judge Maria Antongiorgi-Jordan.Signed by Judge Maria Antongiorgi-Jordan on 2/7/2025. (ao) Modified as per Chambers request on 2/7/2025 (rim). (Entered: 02/07/2025) |
| 02/07/2025 | 55 | AMENDED ORDER: Due to calendar conflicts, **Pretrial Conference is RESET for 4/24/2025 at 1:30 PM in Hato Rey Courtroom 2 before Judge Maria Antongiorgi-Jordan.** Signed by Judge Maria Antongiorgi-Jordan on 2/7/2025. (ao) (Entered: 02/07/2025) |
| 04/21/2025 | 56 | ORDER. **Pretrial Conference is RESET for 5/28/2025 at 1:30 PM in Hato Rey Courtroom 2 before Judge Maria Antongiorgi-Jordan.** Signed by Judge Maria Antongiorgi-Jordan on 4/21/2025. (ao) (Entered: 04/21/2025) |

| 05/14/2025 | 57 | MOTION to Continue *PreTrial Conference Hearing* filed by Diana Itzel Perez-Carlo on behalf of Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi. Responses due by 5/28/2025. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Perez-Carlo, Diana) (Entered: 05/14/2025) |
|---|---|---|
| 05/15/2025 | 58 | ORDER granting: 57 "Motion to Continue." Pretrial Conference is RESET for 6/18/2025 1:30 PM in Hato Rey Courtroom 2 before Judge Maria Antongiorgi-Jordan. Signed by Judge Maria Antongiorgi-Jordan on 5/15/2025. (ao) (Entered: 05/15/2025) |
| 05/30/2025 | 59 | OPINION AND ORDER granting: 36 Plaintiffs' "Motion for Summary Judgment;" denying: 52 Defendants' "Cross Motion for Summary Judgment." Judgment shall be entered accordingly. Signed by Judge Maria Antongiorgi-Jordan on 5/30/2025. (ao) (Entered: 05/30/2025) |
| 06/02/2025 | 60 | JUDGMENT is entered DISMISSING this action WITH PREJUDICE in its entirety. This case is now closed for statistical purposes. Signed by Judge Maria Antongiorgi-Jordan on 6/2/2025. (ao) (Entered: 06/02/2025) |
| 06/27/2025 | 61 | MOTION for Reconsideration re 59 Opinion and Order,, Terminate Motions, filed by Diana Itzel Perez-Carlo on behalf of Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi. Responses due by 7/11/2025. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Related document(s) 59 ) (Perez-Carlo, Diana) (Entered: 06/27/2025) |
| 06/30/2025 | 62 | ORDER denying: 61 "Motion for Reconsideration." Defendants have failed to "establish a manifest error of law or... present newly discovered evidence" as required to succeed on a motion under Fed. R. Civ. P. 59. *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005). All of the arguments presented in Defendant's Motion have already been analyzed and rejected by this Court. As Defendants correctly note, a motion for reconsideration "is not a mechanism to rehash old arguments that have already been rejected by the court." ECF 61 , citing *Natl Metal Finishing Co. v. Barclays American/Commercial, Inc.*, 899 F.2d 119, 122 (1st Cir. 1990). Signed by Judge Maria Antongiorgi-Jordan on 6/30/2025. (ao) (Entered: 06/30/2025) |
| 07/01/2025 | 63 | MOTION to Enforce Judgment filed by Johanna M. Emmanuelli-Huertas on behalf of All Plaintiffs. Responses due by 7/15/2025. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Emmanuelli-Huertas, Johanna) (Entered: 07/01/2025) |
| 07/01/2025 | 64 | NOTICE OF APPEAL as to 60 Judgment, 62 Order on Motion for Reconsideration,,, 59 Opinion and Order,, Terminate Motions, by Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi.<br><br>**NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** (Perez-Carlo, Diana) (Entered: 07/01/2025) |
| 07/03/2025 | 65 | Certified and Transmitted Record on Appeal to US Court of Appeals re 64 Notice of Appeal [Docket Entries 59, 60, 62 & 64] (idg) (Entered: 07/03/2025) |
| 07/08/2025 | 66 | ORDER granting: 63 "Motion to Enforce Judgment." Under Fed. R. Civ. P. 62(c), unless the court orders otherwise, "an interlocutory or final judgment in an action for an injunction" is "not stayed after being entered, even if an appeal is taken." (Emphasis added). Defendants were ordered by this Court on 5/30/2025 to "promptly amend their Application for Gender Change form to include an option to select an 'X' as one's gender |

| | | |
|---|---|---|
| | | marker on their birth certificate." ECF 59 at 19. This order has not been stayed by this Court and is presently enforceable. Defendants shall file proof of compliance by 7/31/2025. Signed by Judge Maria Antongiorgi-Jordan on 7/8/2025. (ao) (Entered: 07/08/2025) |
| 07/14/2025 | 67 | USCA Case Number 25-1638 for 64 Notice of Appeal, filed by Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi. (idg) (Entered: 07/14/2025) |
| 07/18/2025 | 68 | MOTION to Stay *Proceedings Pending Appeal* filed by Diana Itzel Perez-Carlo on behalf of Wanda Llovet-Diaz, Carlos R Mellado-Lopez, Pedro Pierluisi. Responses due by 8/1/2025. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Perez-Carlo, Diana) (Entered: 07/18/2025) |
| 07/22/2025 | 69 | ORDER denying: 68 "Motion to Stay Proceedings." Defendants argue that this Court's decision at ECF 59 is unlikely to succeed on the merits on appeal because it "relied heavily on the Tenth Circuit's decision in *Fowler v. Stitt*, 104 F. 4th 770 (10th Cir. 2024)," which was recently vacated by the U.S. Supreme Court. Yet, the Supreme Court's decision to vacate and remand *Fowler* was explicitly based on the recent decision in *United States v. Skrmetti*, 605 U.S. __ (2025). *Stitt v. Fowler*, 2025 WL 1787695. *Skrmetti*, in turn, held that a law prohibiting certain medical treatments for transgender minors was not subject to heightened scrutiny. By contrast, this Court did not apply a heightened scrutiny standard in reaching the holding at issue. ECF 59 at 12. Moreover, a careful reading of the Opinion at issue makes clear that this Court did not rely on the Tenth Circuit's decision in *Fowler*, and that references to that case were included as dicta or persuasive authority only. *See* ECF 59 at 3 n.1, 11, 14, 17-18. Finally, Defendants have misconstrued this Court's reasoning by inaccurately claiming that our Opinion "stated that while the Government may have a legitimate interest in maintaining accurate birth records, it failed to sufficiently articulate that interest." ECF 68 at 4. This is not accurate: the Opinion at issue held that while the state does have such an interest, that interest is in no way implicated by the relief requested in this case. ECF 59 at 18 ("It is not disputed that Puerto Rico has a legitimate interest in recording facts about its citizens at birth and maintaining accurate vital records. But... the Commonwealth already has existing processes in place to retain original birth certificates in cases where a birth certificate has been subsequently amended."). Thus, Defendants have failed to make a strong showing that they are likely to succeed on the merits of their claim on appeal. Nor have Defendants satisfied the remaining stay factors. See *Nken v. Holder*, 556 U.S. 418, 426 (2009) ("(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."). While Defendants cite to potential "expenses or administrative burdens" imposed on the Commonwealth in having to comply with the Court's orders, ECF 68 at 8, this does not constitute irreparable harm, nor does it outweigh the serious ongoing constitutional violations suffered by Plaintiffs. Signed by Judge Maria Antongiorgi-Jordan on 7/22/2025. (ao) (Entered: 07/22/2025) |
| 07/23/2025 | | USCA Appeal Fees received $ 605 receipt number 119056 re 64 Notice of Appeal,, filed by All Defendants. (rim) (Entered: 07/23/2025) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/24/2025 10:01:28 | | |
| PACER Login: | Pr0613FED | Client Code: | |

| Description: | Docket Report | Search Criteria: | 3:23-cv-01544-MAJ |
|---|---|---|---|
| Billable Pages: | 9 | Cost: | 0.90 |