# UNITED STATES COURT OF APPEALS
## For the First Circuit

———————————

### No. 25-1638

ÍNARU NADIA DE LA FUENTE DÍAZ; MARU ROSA HERNÁNDEZ;
ANDRÉ RODIL; YEIVY VÉLEZ BARTOLOMEI; GÉ CASTRO CRUZ;
DENI JUSTE

Plaintiffs - Appellees,

v.

JENNIFFER A. GONZÁLEZ COLÓN, in the official capacity as Governor of
the Commonwealth of Puerto Rico; DR. VÍCTOR RAMOS OTERO, in his
official capacity as Secretary of Health of the Commonwealth of Puerto Rico;
WANDA LLOVET DÍAZ, in the official capacity as Director of the Division
of Demographic Registry and Vital Statists of the Commonwealth,

Defendants – Appellants.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. María Antongiorgi-Jordán, <u>U.S. District Judge</u>]

———————————

### BRIEF OF THE SENATE OF PUERTO RICO AS *AMICUS CURIAE*
### IN SUPPORT OF DEFENDANTS-APPELLANTS AND FOR REVERSAL

**MARIOLA ABREU-ACEVEDO**
USCA No. 1199215
MZLS LLC
351 Tetuán Street
San Juan, Puerto Rico 00901
Telephone: (787) 478-9484
E-mail: *mabreu@mzls.com*

September 17, 2025

# TABLE OF CONTENTS

**PAGE(S)**

**I.**   **STATEMENT OF INTEREST OF *AMICUS CURIAE*** .................. 3-4

**II.**   **SUMMARY OF THE ARGUMENT** ................................................ 4-6

**III.**   **ARGUMENT** ........................................................................ 7-21

    **A. The District Court's *Opinion and Order* Extended Equal Protection Beyond Its Limits and Displaced Legislative Judgment**……………………………………….......................7-8

    **B. Puerto Rico's Binary Birth Certificate Framework is Neutral and Must Be Upheld Under Deferential Rational Basis Review**…………………………….…………….…....................9-12

    **C. The District Court Erred in Equating Neutral Policy with Animus**……..…………………………………………….12-16

    **D. The *Arroyo-González* Decision and the Civil Code Confirm a Binary Framework**……..…………………………………….16-19

    **E. Judicial Redefinition Would Destabilize Vital Records and Invite an Endless Expansion of Categories**……...................................19-21

**IV.**   **CONCLUSION** ............................................................................21

**CERTIFICATE OF FILING AND SERVICE**...................................................22

**CERTIFICATE OF COMPLIANCE WITH RULE 32(G)**.............................23

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

**U.S. Constitution:**

U.S. Const. art. XIV, § 1 ........................................................9

**Puerto Rico Constitution:**

P.R. Const. art. III, §§ 1–2...................................................3

**Puerto Rico Statues:**

Article 694 of the Civil Code, P.R. Laws Ann. tit. 31. § 7655.........................…18

**Cases (Federal):**

*A.C. by Waithe v. McKee*, 23 F.4th 37 (1st Cir. 2022)….........................................11

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022) (en banc)...............................................................................13

*Armour v. City of Indianapolis*, 566 U.S. 673 (2012) ............................................11

*Arroyo-González v. Rosselló Nevares*, 305 F. Supp. 3d 327 (D.P.R. 2018) .....*passim*

*Ballard v. U.S.*, 329 U.S. 187 (1946).......................................................13

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) .....................8

*Corbitt v. Secretary, Alabama Law Enforcement Agency*, 83 F.4th 1261 (11th Cir. 2023) ...............................................................................12

*D'Angelo v. N.H. Sup. Ct.*, 740 F.3d 802 (1st Cir. 2014)........................................9

*Doherty v. Merck & Co.*, 892 F.3d 493 (1st Cir. 2018) ..........................................11

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993)......................................10, 11

*Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024) .....................................................15

*Frontiero v. Richardson*, 411 U.S. 677 (1973) (Brennan, J.) (plurality opinion) .... 13

*Gore v. Lee*, 107 F.4th 553 (6th Cir. 2024) ...................................... 10, 12, 14, 15, 20

*Jeneski v. City of Worcester*, 476 F.3d 14 (1st Cir. 2007). ....................................... 11

*Kittery Motorcycle, Inc. v. Rowe*, 320 F.3d 42 (1st Cir. 2003) ............................... 11

*McKenna by & through McKenna v. Maine Dep't of Health & Hum. Servs.*, --F.4t-- (1st Cir. 2025) ...................................................................................................... 10

*Obergefell v. Hodges*, 576 U.S. 644 (2015) (Roberts, C.J., dissenting) ................. 16

*U.S. v. Skrmetti*, 605 U.S. ___, 145 S. Ct. 1816 (2025) ......................... 7, 11, 12, 20

*U.S. v. Virginia*, 518 U.S. 515 (1996) ............................................................... 12, 13

*United States v. Windsor*, 570 U.S. 744 (2013) (Alito, J., dissenting) ................... 16

*Washington v. Davis*, 426 U.S. 229 (1976) .............................................................. 8

## I.    STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

The Senate of Puerto Rico is one of the two chambers of Puerto Rico's Legislative Assembly and is constitutionally vested with the power to enact laws on behalf of the people of Puerto Rico. *See* P.R. Const. art. III, §§ 1–2. Through its lawmaking authority, the Senate exercises core responsibilities in shaping social policy, regulating civil status, and defining the framework of vital records that affect every resident of Puerto Rico.

The Senate has a strong institutional interest in ensuring that questions of civil status and identity documentation remain within the prerogative of Puerto Rico's elected representatives rather than being imposed through judicial decree. The district court's *Opinion and Order* mandating recognition of a third sex marker on birth certificates bypassed Puerto Rico's Legislative Assembly and effectively rewrote the Puerto Rico Civil Code. That result undermines the principle of separation of powers and threatens the ability of Puerto Rico's elected branches to set policy in areas of profound social significance.

The Senate also brings a unique perspective. It was the Legislative Assembly that codified the framework for amending sex designations in the 2020 Civil Code, which reaffirmed the holding of *Arroyo-González v. Rosselló Nevares*, 305 F. Supp.

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund the brief's preparation or submission; and no person other than *amicus* contributed money intended to fund the brief's preparation or submission.

3

3d 327 (D.P.R. 2018), while preserving Puerto Rico's binary structure of vital records. The Senate's understanding of that legislative history and intent is directly relevant to evaluating the decision below. Because the Senate speaks on behalf of one of Puerto Rico's coequal political branches, it is well positioned to assist the Court in understanding both the constitutional stakes and the institutional consequences of affirming the district court's ruling.

The Senate appears as *amicus curiae* in support of Defendants-Appellants[2] to underscore the importance of legislative primacy, the limits of judicial authority, and Puerto Rico's right to determine how vital records are defined and maintained. Because the challenge here invites the federal judiciary to displace the considered judgment of Puerto Rico's elected representatives and to extend equal protection beyond its established bounds, the Senate urges this Honorable Court to reverse the district court's *Opinion and Order* and corresponding judgment.

## II.     SUMMARY OF THE ARGUMENT

The district court erred in ordering Puerto Rico to revise its current administrative practice within the Demographic Registry to recognize a third designation ("X") on birth certificates because certain individuals subjectively

---

[2] Defendants-Appellants are Jenniffer A. González Colón, in her official capacity as Governor of Puerto Rico; Dr. Víctor Ramos Otero, in his official capacity as Secretary of the Department of Health of Puerto Rico; and Wanda Llovet Díaz, in her official capacity as the Director of the Division of Demographic Registry and Vital Statistics of Puerto Rico (collectively, "Government", "Puerto Rico" or "Defendants-Appellants").

4

believe that neither male nor female sex designations accurately represent their nonbinary identity. Its ruling departed from established equal protection doctrine, misapplied *Arroyo-González*, and disregarded the role of Puerto Rico's Legislative Assembly.

Puerto Rico's amendment policy is neutral and applies equally to all: birth certificates may be amended within the binary of "male" and "female," but no third marker is recognized. Neither transgender nor nonbinary status has been recognized as a suspect class, and no fundamental right exists to a gender-identity-based birth certificate. Accordingly, rational basis review controls.

Under that deferential standard, the Constitution requires only a plausible justification. And classifications need not be perfect to pass muster. Puerto Rico's policy advances multiple legitimate interests: accuracy and integrity of vital records, preserving a consistent and historically grounded definition of sex, ensuring the accuracy of the Government's official speech, maintaining alignment across federal and territorial identification systems, preventing fraud, promoting administrative efficiency, interpreting and enforcing its own laws and policies, among others. Each of these interests suffices to sustain the policy. Equal protection does not require Puerto Rico to abandon an objective, longstanding criterion in favor of subjective identity claims.

5

The district court erred in equating neutrality with hostility. Adhering to the binary conception of sex long recognized by law and medical practice is not animus; it is a legitimate policy choice. Courts of Appeals have upheld comparable frameworks under rational basis review.

The decision in *Arroyo-González* does not support the district court's ruling. That case was grounded solely in constitutional privacy, not equal protection, and its remedy was confined to binary amendments. The 2020 Civil Code codified this limited holding and reaffirmed that binary process, deliberately declining to authorize a third designation. To expand *Arroyo-González* into a mandate for nonbinary designations distorts both the opinion and legislative intent.

Ultimately, Plaintiffs-Appellees ask the judiciary to redefine the meaning of sex for Puerto Rico. That is not the judiciary's role. The Constitution does not compel Puerto Rico to record gender identity on birth certificates, and the decision to preserve a binary definition of sex is rational and legitimate.

Finally, the district court's reasoning contains no limiting principle. If equal protection compels recognition of a third marker, it could compel recognition of an indefinite expansion of categories, destabilizing the very function of vital records. These are questions for Puerto Rico's elected representatives to resolve, not for judicial decree.

For the foregoing reasons, the judgment below should be reversed.

6

## III.    ARGUMENT

### A. The District Court's *Opinion and Order* Extended Equal Protection Beyond Its Limits and Displaced Legislative Judgment.

Federal courts play a critical role in enforcing constitutional guarantees. But they may not substitute their own policy preferences for those of elected representatives absent a clear constitutional command.

The Constitution authorizes courts to invalidate legislative choices when a fundamental right is infringed, or a suspect classification is targeted. But no such violation is present here. Neither the Supreme Court nor this Court has recognized transgender or nonbinary status as a suspect class. Nor has either court established a fundamental right to a gender-identity-based birth certificate. Without such a mandate, judicial intervention is unwarranted. *See U.S. v. Skrmetti*, 605 U.S. ___, 145 S. Ct. 1816 (2025) ("Our role is not 'to judge the wisdom, fairness, or logic' of the law before us, but only to ensure that it does not violate the equal protection guarantee of the Fourteenth Amendment. Having concluded it does not, we leave questions regarding its policy to the people, their elected representatives, and the democratic process.'") (citation omitted).

Defendants-Appellants have already thoroughly explained how the district court's "flawed" application of rational basis review "contravenes fundamental constitutional principles" and outright ignored the numerous legitimate governmental interests supporting Puerto Rico's policy. *See* Appellants' Br. at 5, 12,

18-29. Those interests include maintaining the accuracy and integrity of vital records, preserving a consistent and historically grounded definition of sex, ensuring the accuracy of the Government's official speech, maintaining alignment across federal and territorial identification systems, preventing fraud, promoting administrative efficiency, and interpreting and enforcing Puerto Rico's own laws and policies. *Amicus* will not belabor the point but emphasize its agreement that these interests underscore that policy's rationality and prudence.

Puerto Rico's Legislative Assembly has already legislated in this area. In *Arroyo-González*, the district court struck down Puerto Rico's prior categorical ban on sex-marker amendments, but it did so narrowly, on privacy grounds, and within the male-female binary. The 2020 Civil Code codified this framework, reiterating the process for amendments limited to changes between "male" and "female. In doing so, the Legislature chose not to authorize any third designation.

By requiring Puerto Rico to issue birth certificates with a third marker, the district court extended equal protection beyond precedent and displaced legislative judgment without constitutional necessity. Whether to alter Puerto Rico's longstanding binary system is a policy matter for its people and their representatives, not for judicial decree.

**B. Puerto Rico's Binary Birth Certificate Framework is Neutral and Must Be Upheld Under Deferential Rational Basis Review.**

Puerto Rico's policy governing amendments to birth certificates applies the same rule to all: an individual may amend from male to female or from female to male, but the system does not recognize a third designation. The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially "a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Under Puerto Rico's framework, all individuals are treated alike in that amendments are permitted only within the binary of male and female.

This policy is facially neutral. It records sex for everyone using the same binary standard. Identification is not discrimination. Birth certificates are designed to record objective historical facts—date, place, parentage, and sex at birth—not to serve as instruments of self-expression. Merely recording sex as male or female is a neutral act of identification, consistent with medical science and with Puerto Rico's longstanding legal practice. As the Supreme Court has noted, a facially neutral policy cannot be invalidated absent proof of discriminatory purpose. *Washington v. Davis*, 426 U.S. 229, 244 n.12 (1976). No such purpose exists here.

Because neither gender identity nor nonbinary status is a suspect class, and because "no fundamental right to a birth certificate [that] record[s] gender identity"

9

rather than "biological sex" exists, *Gore v. Lee*, 107 F.4th 553, 557 (6th Cir. 2024), rational basis review applies. *See D'Angelo v. N.H. Sup. Ct.*, 740 F.3d 802, 806 (1st Cir. 2014) (equal protection review "limited to a deferential, rational basis standard" absent suspect class or fundamental right). This standard is highly deferential. Two principles control.

*First*, any plausible justification suffices. The Supreme Court has made clear that "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Thus, "[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* "This standard of review is a paradigm of judicial restraint." *Id.* at 314.

Under rational basis review of an equal protection claim, government conduct "is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest". *McKenna by & through McKenna v. Maine Dep't of Health & Hum. Servs.*, --F.4t-- (1st Cir. 2025) (internal quotation marks and citations omitted). This Court has emphasized that "'[t]he question is not what went on in the mind of the state actor but whether anyone, including the judge, can conceive of a rational reason for such a classification.'" *Id.*

(quoting *Jeneski v. City of Worcester*, 476 F.3d 14, 17 (1st Cir. 2007)). *See also Kittery Motorcycle, Inc. v. Rowe*, 320 F.3d 42, 47 (1st Cir. 2003) (noting "even foolish and misdirected provisions will be upheld under this test" (cleaned up)). Plaintiffs bear the heavy burden of showing that "there exists no fairly conceivable set of facts that could ground a rational relationship between the challenged classification and the government's legitimate goals." *Id.* (quoting *Doherty v. Merck & Co.*, 892 F.3d 493, 500 (1st Cir. 2018)). "Because the classification is presumed constitutional, the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012). If there is a plausible reason, the court's "inquiry is at an end." *Beach Commc'ns, Inc.*, 508 U.S. at 314. *See A.C. by Waithe v. McKee*, 23 F.4th 37, 46 (1st Cir. 2022) ("under rational basis review, 'any plausible justification [from the state] will suffice, and effectively ends the analysis.'") (citation omitted).

*Second*, under rational basis review, a policy may stand despite imperfections or incidental inequalities. As the Supreme Court recently reaffirmed in *Skrmetti*:

> We afford States wide discretion to pass legislation in areas where there is medical and scientific uncertainty." *Gonzales v. Carhart*, 550 U.S. 124, 163, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007). **"[T]he fact the line might have been drawn differently at some points <u>is a matter for legislative</u>, rather than judicial, consideration**." *Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980); see *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) ("In the area of economics and social welfare, a

11

State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect."); *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911) ("A classification having some reasonable basis does not offend against [the Equal Protection Clause] merely because it is not made with mathematical nicety or because in practice it results in some inequality."). (emphasis added).

That principle applies here with full force. Other courts have upheld similar binary frameworks against equal protection challenges. *See*, *e.g., Gore*, 107 F.4th at 557; *Corbitt v. Secretary, Alabama Law Enforcement Agency*, 83 F.4th 1261 (11th Cir. 2023). Puerto Rico's policy is no different. Despite the district court's conclusion to the contrary, it is supported by multiple legitimate interest, including accuracy of vital records, maintaining a consistent and historically definition of sex, assuring alignment with federal systems, prevention of fraud, administrative efficiency, among others. Each of these interests suffices to sustain the policy under rational basis review. Together, they confirm that the Constitution requires no more.

**C. The District Court Erred in Equating Neutral Policy with Animus.**

The district court wrongly concluded that Puerto Rico's binary policy must reflect hostility toward nonbinary persons because it could not "conceive any rational basis" for the classification. Addendum ("Add") 18. That conclusion is unfounded.

Puerto Rico's reliance on the binary conception of sex has long been recognized by the Supreme Court. *See, e.g.*, *U.S. v. Virginia*, 518 U.S. 515, 533

(1996) ("Physical differences between men and women . . . are enduring"); *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (Brennan, J.) (plurality opinion) ("[S]ex, like race and national origin, is an immutable characteristic determined solely by the accident of birth"); *Ballard v. U.S.*, 329 U.S. 187, 193 (1946) ("the two sexes are not fungible"). Numerous Circuit Courts have done the same. *See, e.g.*, *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 807 (11th Cir. 2022) (en banc) (referencing "the Supreme Court's longstanding recognition" that sex is immutable). Surely the authors of such opinions, and the numerous Justices and judges who joined those opinions, were not expressing animus of any kind by recognizing these biological realities. Against this backdrop, it is fanciful to find animus in Puerto Rico's reliance on the same view.

Plaintiffs' own allegations confirm that their objection is definitional, not evidence of hostility. They allege that Puerto Rico's policy is "rigid" and excludes "persons who are neither male nor female." Appendix ("App.") 99 ¶ 48 ("Because of the Demographic Registry's rigid sex-based classification, Plaintiffs, persons who are neither male nor female, are precluded from obtaining birth certificate with a marker that properly indicates Plaintiff' sex"). They claim it rests on "assumptions … about the nature of sex as a binary characteristic, either male or female." App. 99 ¶ 49. And they contend it reflects "the false belief that all people are either exclusively men/male or exclusively women/female." App. 99 ¶ 50. They further

alleged that Puerto Rico "intentionally discriminates" because the Registry lists a person's sex at birth, which for transgender individuals differs from their gender identity. App. 97 ¶ 97. And they complain that while "cisgender persons and transgender binary persons" can secure "birth certificate that accurately reflect their sex and that are consistent with their gender identity," "nonbinary persons are deprived" of one. App. 98 ¶ 43. These statements make clear the essence of plaintiffs' claim: they seek to compel Puerto Rico to redefine "sex" itself as gender identity.

The district court accepted this framing and reasoned that "while Puerto Rico may have a legitimate state interest in maintaining accurate records of its citizens' sex at birth, Defendants have failed to articulate why this particular interest is furthered by treating nonbinary individuals differently than binary individuals." Add. 17. That is because, as per the court, that interest was already served by the Government's existing policy of retaining an individual's original birth record in its archives. Add. 18. From this, it inferred animus. Add. 18 (holding that since it "c[ould] not conceive any rational basis for the Policy's current distinction between binary and nonbinary individuals, [it] [was] forced to make 'the inevitable inference that the [classification] is born of animosity toward the class of persons affected.'") (citation omitted). That reasoning misapplies rational basis review.[3] As Defendnats-

---

[3] Notably, the Sixth Circuit in *Gore* rejected the very same reasoning use by the district court:

Appellants have explained, that standard requires courts to uphold a classification if any conceivable rationale supports it. *See* Appellants' Br. at 18-22. By demanding articulated justifications and then inferring hostility from their absence, the district court inverted the test and substituted its policy views for the Legislature's.

To accept plaintiffs' claim would be to constitutionalize one side of a contested social debate and to displace the role of Puerto Rico's Legislature. As the Sixth Circuit observed when affirming the dismissal of a similar equal protection claim, "Plaintiffs' position 'ultimately boil[s] down to a demand that the Federal Constitution requires" States "to use 'sex' to refer to gender identity on all state documents. . . . The Constitution does not contain any such requirement." *Gore*, 107 F.4th at 557. To be sure, the plaintiffs' facial allegation that subjective gender identity "is the primary factor in determining a person's sex," App. 92 ¶ 29, betrays what their positions "ultimately boils down to." It is simply a demand that the federal judiciary "resolve a debate between two competing views of" biological sex under an "equal protection framework . . . [that] is ill suited for use in evaluating the

---

Invoking a recent Tenth Circuit case, the plaintiffs insist that Tennessee can maintain this original information but still must issue an amended birth certificate for a citizen's "own use." *Fowler v. Stitt*, 104 F.4th 770, 795–96 (10th Cir. 2024) […]. With respect, this approach misunderstands rational basis review. That deferential standard does not require States to show that a classification is the only way, the best way, or even the most defensible way to achieve their interests. It requires only that some plausible reason supports the classification, no matter how imprudent or ineffective. A State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. *Gore*, 107 F.4th at 561 (internal quotation marks and citations omitted).

constitutionality of laws based on the traditional understanding of [biological sex], which fundamentally turn on what [biological sex] is." *United States v. Windsor*, 570 U.S. 744, 811, 813 (2013) (Alito, J., dissenting).

To grant relief here would require the judiciary to redefine sex. The traditional definition of sex —long embedded in law and biology—is independent of gender identity. For a court to replace it would be "an act of will, not legal judgment." *Obergefell v. Hodges*, 576 U.S. 644, 687–88 (2015) (Roberts, C.J., dissenting). Plaintiffs "implicitly ask [the court] to endorse" their definition and "to reject the traditional view," *Windsor*, 570 U.S. at 815 (Alito, J., dissenting)—a task neither the Constitution nor biological reality permits.

In sum, Puerto Rico's rule is neutral: all birth certificates record biological sex at birth. Plaintiffs' disagreement with that definition is a policy matter for the Legislature, not a constitutional violation. The district court's inference of animus from this neutral framework is error. As Chief Justice Roberts cautioned, "a State's decision to maintain the meaning of [biological sex] that has persisted in every culture throughout human history can hardly be called irrational." *Obergefell*, 576 U.S. at 686 (Roberts, C.J., dissenting).

### D. The *Arroyo-González* Decision and the Civil Code Confirm a Binary Framework.

In district court below erred in treating *Arroyo-González* as if it provided support for recognition of a third marker. That case struck down Puerto Rico's prior

16

categorical ban on amending sex markers on birth certificates, but the ruling was firmly anchored in the doctrine of constitutional privacy—not Equal Protection—and its remedy was confined to binary amendments.

The *Arroyo-González* court explained that privacy rights fall into two clusters: decisional privacy, which protects autonomy in making significant personal choices, and informational privacy, which safeguards confidentiality of personal matters. The court held that Puerto Rico's categorical ban on amending gender markers implicated both rights: by refusing to allow such amendments, the Government of Puerto Rico compelled transgender individuals to disclose their status whenever they presented their birth certificates for official purposes, infringing decisional privacy. And by permitting name changes but not sex marker changes, the Government forced disclosure of private information, infringing informational privacy.

But crucially, the *Arroyo-González* court did not invoke Equal Protection or require the Government of Puerto Rico to create any new sex categories. Instead, the relief was limited to binary categories. The court explicitly mandated that:

> The Demographic Registry of the Commonwealth of Puerto Rico SHALL ADOPT the criteria of the Department of Transportation and Public Work's "Request to Change Transgender Persons' Gender Marker," DTOP-DIS-324 Form, as the application form to be submitted by transgender [persons] and which shall be accepted as the first step towards the issuance of their new birth certificates, in compliance with the Court's mandate. *See* Attachment A to the Judgment. The transgender individual shall present the application accompanied by one of the following documents: (1) a passport that reflects a person's true gender, whether **female or male**, (2) a driver's license that reflects

17

the person's true gender, <u>whether **female or male**</u>, or (3) a certification issued by a healthcare professional or mental health professional with whom the person has a doctor-patient relationship stating, based on his or her professional opinion, the true gender identity of the applicant, <u>whether **female or male**</u>, and that it is expected that this will continue to be the gender with which the applicant will identify him or herself in the future. If the applicant has not had any of the documents requested previously issued, a health care professional or mental health professional with whom the applicant has a doctor-patient relationship must certify based on his or her professional opinion that the true gender identity of the applicant is () **female or () male** and that it is expected that this will continue to be the gender with which the applicant will identify him or herself in the future." *Arroyo-González*, 305 F.Supp.3d at 334 (emphasis added).

By its own terms, *Arroyo-González*'s mandate extended only to binary amendments. It required the Demographic Registry to implement a procedure for amending markers in a birth certificate, but only within the binary of "male" and "female," supported by official documents or medical certification. Nothing in the order authorized, required, or even contemplated recognition of a third option.

When the Legislative Assembly enacted the 2020 Puerto Rico Civil Code, it codified and reaffirmed this limited holding. *See* P.R. Laws Ann. tit. 31. § 7655. Both the text of the statute and the legislative debate confirm the provision was enacted to implement *Arroyo-González*'s privacy rationale while preserving the binary framework. Specifically, Article 694 of the Civil Code, after describing the narrow exception for amending an original birth record in cases where there was sexual ambiguity or error in recording the individual's biological sex at birth, expressly

clarifies that nothing therein modifies the process established for requesting a gender change in the birth certificate:

> Nothing set forth herein detracts from the process established for requesting a gender change in the birth certificate. These applications shall be accompanied by a passport, driver's license or a certification issued by a health professional who has a doctor-patient relationship with the applicant attesting to the gender. In these cases, the Registry shall issue the certificate, safeguarding privacy rights. *Id.* (Emphasis added).

The Legislature could have considered broader reforms but deliberately declined to create or authorize nonbinary designations. The district court's reliance on *Arroyo-González* to support recognition of a third marker thus distorts both the case and legislative intent. *Arroyo-González* itself demonstrates the opposite: the right to amend birth certificates was framed exclusively within a binary system. To expand it further is not interpretation but legislation, which lies beyond the judicial role and within the prerogative of the Government of Puerto Rico.

### E. Judicial Redefinition Would Destabilize Vital Records and Invite an Endless Expansion of Categories.

Birth certificates are foundational documents that integrate with federal databases, immigration systems, health care, education, and law enforcement—all of which rely on binary classifications. Judicially requiring a third marker would destabilize those systems, producing conflicts and inconsistencies far beyond Puerto Rico.

19

Even more concerning, the district court's reasoning contains no limiting principle. If equal protection requires recognition of a third designation for nonbinary individuals, why not for other asserted identities—where does it stop? Plaintiffs themselves highlight that sex should not be treated as exclusively male or female. App. 99 ¶ 50. Other individuals might claim that the Constitution requires recognition of multiple nonbinary variations or even insist that no sex marker should appear at all. Still others might press claims of "age identity" or "height identity," concepts already invoked in public debate. Once the judiciary departs from the binary framework, there is no clear constitutional stopping point.

Courts have warned against precisely this risk. The Sixth Circuit in *Gore* explained that constitutionalizing the debate over sex definitions would "short-circuit" the democratic process and risk destabilizing policy in multiple contexts, from sports to medical care to official identification. 107 F.4th at 556-57. The Supreme Court in *Skrmetti* likewise emphasized that line-drawing in areas of social and medical uncertainty is for legislatures, not judges. 145 S. Ct. at 1836. And the Eleventh Circuit in *Corbitt* highlighted the State's interest in consistency across official documents. 83 F.4th at 1276. That interest would collapse if every new identity claim required constitutional recognition. The very function of vital records—clarity, stability, and uniformity—would be undermined.

Puerto Rico's policy advances precisely these interests: accuracy, consistency, efficiency, and reliability in vital records that integrate with broader governmental systems. Nothing in the Equal Protection Clause mandates their destabilization by requiring Puerto Rico to abandon centuries of consistent recordkeeping and plunge into an open-ended redefinition of sex. If Puerto Rico is to reconsider its binary framework, it must do so through the democratic process, where elected representatives can balance competing interests and adopt policies that are stable, administrable, and consistent with broader legal systems.

## IV.    CONCLUSION

The district court misconstrued equal protection, expanded *Arroyo-González* beyond its holding, imputed animus without basis, and usurped the prerogatives of the Government of Puerto Rico.

**WHEREFORE**, the Senate of Puerto Rico respectfully urges this Honorable Court to reverse the judgment of the district court.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 17th day of September, 2025.

*s/Mariola Abreu Acevedo*
**MARIOLA ABREU-ACEVEDO**

**CERTIFICATE OF FILING AND SERVICE**

**I HEREBY CERTIFY** that on this same date I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to all counsel of record.

In San Juan, Puerto Rico this 17th day of September, 2025.

*s/Mariola Abreu Acevedo*
**MARIOLA ABREU-ACEVEDO, ESQ.**
USCA No. 1199215
MZLS LLC
351 Tetuán Street, 2-B
San Juan, Puerto Rico 00901
Telephone: (787) 478-9484
Email: *mabreu@mzls.com*

*Counsel for Amicus Curiae*
*Senate of Puerto Rico*

22

**CERTIFICATE OF COMPLIANCE WITH RULE 32(G)**

**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5):

  [x] This brief contains 4,504 words in compliance with Fed. R. App. P. 29(a)(5), excluding the parts of the brief excluded by F. R. App. P. 32(f).

  [ ] This brief uses a monospaced typeface and contains [state the number of] lines of text.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

  [x] This brief has been prepared in a proportionally spaced typeface using Times New Roman, Size 14.

  [ ] This document has been prepared in a monospaced typeface using [state name and version of word-processing program] with [state number of characters per inch and name of type style].

     *s/Mariola Abreu-Acevedo*

     *Counsel for Amicus Curiae*
     *Senate of Puerto Rico*

     Dated:  September 17, 2025