# United States Court of Appeals

*for the*

# First Circuit

---

Case No. 25-1638

---

ÍNARU NADIA DE LA FUENTE DÍAZ; MARU ROSA HERNÁNDEZ;
ANDRÉ RODIL; YEIVY VÉLEZ BARTOLOMEI; GÉ CASTRO CRUZ;
DENI JUSTE,

*Plaintiffs-Appellees,*

v.

JENNIFER A. GONZÁLEZ COLÓN, in the official capacity as Governor of the
Commonwealth of Puerto Rico; DR. VÍCTOR RAMOS OTERO, in the official
capacity as Secretary of the Department of Health of the Commonwealth;
WANDA LLOVET DÍAZ, in the official capacity as the Director of the Division
of Demographic Registry and Vital Statistics of the Commonwealth,

*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO IN CASE NO. 23-CV-01544,
HONORABLE MARÍA ANTONGIORGI-JORDÁN

---

## BRIEF OF *AMICUS CURIAE* AMNESTY INTERNATIONAL PUERTO RICO SECTION, INC. IN SUPPORT OF APPELLEES

JESSICA MÉNDEZ-COLBERG
CONSULTORAS DE ESTRATEGIAS
  LEGALES Y FINANCIERAS
  INTEGRALES LLC (CELFI LLC)
*Counsel for Amicus Curiae*
P.O. Box 8008
Ponce, P. R. 00732
(787) 962-5918

CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for *Amici Curiae* states as follows:

*Amici Curiae,* Amnesty International Puerto Rico Section, Inc., is a nonprofit corporation created under the laws of the Commonwealth of Puerto Rico. It has no stocks, and it is not a "nongovernmental corporate party" for purposes of Rule 26.1 Therefore, for purposes of Rule 26.1, there are no disclosures requirements with respect to it.

<u>/s/ Jessica E. Méndez-Colberg</u>
JESSICA E. MÉNDEZ-COLBERG

*Counsel for Amnesty International Puerto Rico Section, Inc.*

# TABLE OF CONTENTS

INTEREST STATEMENT OF *AMICUS CURIAE*.................................................................1

SUMMARY OF THE ARGUMENT..................................................................................2

ARGUMENT ...........................................................................................................3

    I.    U.S. courts should interpret the U.S. law, including the Constitution, as consistent with U.S. obligations under international law. .....................................3

    II.    The United States is obliged by international human rights law to protect the rights of non-binary persons and to affirm their Rights to Self-Identification, bodily autonomy, equality and legal gender recognition ......................................5

    A.    Right to Equality and Non-Discrimination......................................................6

    B.    The right to gender self-determination and autonomous control over one's body............................................................................................................8

    C.    Right to Legal Gender Recognition.............................................................10

CONCLUSION ......................................................................................................17

## TABLE OF AUTHORITIES

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 .......................................................................... 3

**Cases**

*Accord Talbot v. Seeman*,
  5 U.S. (1 Cranch) 1 (1801) ..................................................................... 4

*Chew Heong v. United States*,
  112 U.S. 536 (1884) ................................................................................. 3

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
  542 U.S. 155 (2004) ................................................................................. 4

*Filartiga v. Pena-Irala*,
  630 F.2d 876 (2d Cir. 1980) .................................................................... 4

*Hamdan v. Rumsfeld*,
  548 U.S. 557 (2006) ................................................................................. 4

*INS v. Cardoza-Fonseca*,
  480 U.S. 421 (1987) ................................................................................. 4

*Ma v. Ashcroft*,
  257 F.3d 109 (9th Cir. 2001) ................................................................... 3

*Murray v. The Charming Betsy*,
  6 U.S. (2 Cranch) 64 (1804) .................................................................... 4

*Sosa v. Alvarez-Machain*,
  542 U.S. 692 (2004) .............................................................................. 3, 4

## Treatises

*International Convention on the Elimination of All Forms of Discrimination Based on Race*, Treaty Doc. 95-18, 95th Con. (Jun. 24, 1994)...........................5, 8

*International Covenant on Civil and Political Rights*, (Dec. 16, 1966) 999 U.N.T.S. 171, art. 26.................................................................................7

*International Covenant on Civil and Political Rights*, Treaty Doc. 95-20, 95th Cong. (Apr. 2, 1992).........................................................................5

United Nations. *International Covenant on Civil and Political Rights*, (Dec. 16, 1966, 999) U.N.T.S. 171, art. 26. ........................................................7

United Nations. *Universal Declaration of Human Rights*. (1948), art. 1. https://www.un.org/en/about-us/universal-declaration-of-human-rights.........6, 13

## Secondary Sources

Restatement (Fourth) of Foreign Relations Law § 301(3) (Am. Law Inst. 2018). .......................................................3

Restatement (Fourth) of Foreign Relations Law § 310(1) (Am. Law Inst. 2018).........................................................3

Restatement (Third) of Foreign Relations Law § 111(4) cmt. c (Am. Law Inst. 1987)..........................................3

## Other Authorities

African Commission on Human and Peoples' Rights, Inter-American Commission on Human Rights, United Nations & University of Pretoria (eds), *Ending Violence and Other Human Rights Violations Based on Sexual Orientation and*

*Gender Identity: A Joint Dialogue of the African Commission on Human and People's Rights, Inter-American Commission on Human Rights and United Nations'* (2016), Annex 6. ................................................................................11

Australian Government Guidelines on the Recognition of Sex and Gender (2013). https://www.ag.gov.au/sites/default/files/2020-03/AustralianGovernmentGuidelinesontheRecognitionofSexandGender.pdf .....15

Committee on Economic, Social and Cultural Rights United Nations, *General Comment No. 20: Non-discrimination in Economic, Social and Cultural Rights*, U.N. Doc. GE.09-43405 (E) 090709 (Jul., 2 2009)................................................7

Committee on the Elimination of Discrimination against Women, *General Recommendation No. 28: The Core Obligations of States Parties under Article 2 of the Convention on the Elimination of All Forms of Discrimination against Women*, U.N. Doc. CEDAW/C/GC/28 (Dec. 16, 2010) .......................................8

Gender Identity and The Human Rights Act, Bill C-16 (2017) Canada.. ...............15

Inter-American Court of Human Rights, Gender identity, and equality and non-discrimination of same-sex couples, Advisory Opinion OC-24/17, Series A No. 24 (Nov. 24, 2017). ................................................................................9

Levitt, H.M., Kehoe, K.A., Day, L.C. et al. *Being Not Binary: Experiences and Functions of Gender and Gender Communities.* Sex Roles 90, 1766–1786 (2024). ........................................................................................ 12, 13

Office of the United Nations High Commissioner for Human Rights, *Living Free and Equal* (2016). .............................................................................10

Registro Nacional de las Personas, Decreto 476/2021, Argentina. .........................16

Sara Robles Rivera, *Time for the United States to Start Complying with Human Rights Treaties: On the Self-Executing Treaty Doctrine as to Human Rights Violations*, 54 Rev. Jur. UIPR 111 (2020).........................................................4, 5

*Sunil Babu Pant and Others v Nepal Government and Others*, Supreme Court of
    Nepal, (2008) 2 NJA L.J. 261-286. ......................................................................14

United Nations, *Report of the Independent Expert on protection against violence
    and discrimination based on sexual orientation and gender identity, 'Protection
    against violence and discrimination based on sexual orientation and gender
    identity'* (Jul. 12, 2018) U.N. Doc No. A/73/152. .............................. 8, 10, 11, 12

Yogyakarta Principles, *Principles on the application of international human rights
    law in relation to sexual orientation and gender identity*. (2006) Geneva.
    http://www.yogyakartaprinciples.org. ..................................................... 6, 8, 9, 13

Yogyakarta Principles Plus 10, *Additional Principles and State Obligations on the
    Application of International Human Rights Law in Relation to Sexual
    Orientation, Gender Identity, Gender Expression and Sex Characteristics to
    Complement the Yogyakarta Principles*. (2017) Geneva.
    http://www.yogyakartaprinciples.org ............................................. 6, 9, 10, 11, 13

## INTEREST STATEMENT OF *AMICUS CURIAE*[1]

Amnesty International Puerto Rico Section, Inc. ("Amnesty International Puerto Rico"), is the national section of Amnesty International, a global movement of more than ten million members, activists and supporters in more than 150 countries and territories. Amnesty International Puerto Rico focuses on human rights issues in Puerto Rico and advocates for U.S. and global compliance with international human rights law, the development of human rights norms, and the effective enjoyment of human rights by all persons. Amnesty International Puerto Rico campaigns for a world in which all human rights enshrined in the Universal Declaration of Human Rights ("UDHR") and other international human rights instruments are enjoyed by all. Together with the wider movement, Amnesty International Puerto Rico also monitors state compliance with international human rights law and engages in advocacy, litigation and education to prevent and end human rights violations and demand justice for those whose rights have been violated. Its interests are specifically implicated in the case at bar, because the outcome is likely to affect the human rights of individuals in the United States

---

[1] Pursuant to Rule 29(a)(4)(E), amici state that no counsel for any party authored this brief in whole or in part, and that no entity or person other than amici and their counsel made any monetary contribution toward the preparation and submission of this brief. The parties have consented to the filing of this amicus brief.

substantially. Consistent with its global work advocating for gender recognition laws based on self-identification, right to privacy and free from arbitrary barriers, Amnesty International Puerto Rico respectfully offers its perspective through this brief to assist the Court in affirming the human rights imperative for equal recognition for all nonbinary persons.

Pursuant to Rule 29(a)(2) of the Federal Rules of Appellate Procedure First Circuit Local Rules, undersigned counsel has contacted counsel of record for Defendants-Appellants and Plaintiffs-Appellees regarding their consent to participate as *amicus curiae.* Counsel for Defendants-Appellants and counsel for Plaintiffs-Appellees have expressly consented to this filing.

### SUMMARY OF THE ARGUMENT

Under Article VI of the Constitution and Supreme Court precedent, U.S. courts must construe federal law consistently with the treaties ratified by the United States. This Court should accordingly decide the appeal in a manner consistent with U.S. obligations under international law in general, and international human rights law in particular.

The judgment of the District Court must be affirmed because the Commonwealth of Puerto Rico's policy, which denies nonbinary individuals the ability to obtain a birth certificate reflecting their gender identity while affording this right to binary transgender individuals, is inconsistent with human rights law and

standards and the international obligations of the United States. Amnesty Puerto Rico submits that international human rights law and standards set out aims and principles to be applied to improve access to legal gender recognition. Where governments fail to provide accurate and affirming documentation, nonbinary individuals face systemic discrimination, barriers to healthcare, education, and employment, and heightened risks of harassment and violence.

**ARGUMENT**

## I.   U.S. courts should interpret the U.S. law, including the Constitution, as consistent with U.S. obligations under international law.

Under the Constitution's Supremacy Clause, treaties "shall be the supreme Law of the Land . . . ." U.S. Const. art. VI, cl. 2. Judicial decisions inconsistent with treaty obligations put the United States in breach of its international law obligations.[2] Restatement (Fourth) of Foreign Relations Law § 301(3) (Am. Law Inst. 2018).

---

[2] Although the treaties applicable to this appeal may not be "self-executing," meaning that they do not provide a private right of action in domestic courts absent enabling legislation, Restatement (Third) of Foreign Relations Law § 111(4) cmt. c (Am. Law Inst. 1987), they nonetheless "bind the United States as a matter of international law." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 735 (2004); *see also* Restatement (Third) of Foreign Relations Law § 111 cmt. h; Restatement (Fourth) of Foreign Relations Law § 310(1) (Am. Law Inst. 2018) (non-self-executing treaties enforceable in courts through "judicial application of preexisting or newly enacted law"). Accordingly, they are a source of binding obligations when construing a federal law. *See Chew Heong v. United States*, 112 U.S. 536, 548-50 (1884); *Ma v. Ashcroft*, 257 F.3d 1095, 1114-15 (9th Cir. 2001) (construing 8 U.S.C. § 1231(a)(6) as requiring a reasonable time limitation on immigration detention to avoid conflict with International Covenant on Civil and Political Rights). In addition, a treaty that is not self-

3

For over two hundred years, the Supreme Court has admonished that "an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains." *Murray v. The Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804); *Accord Talbot v. Seeman*, 5 U.S. (1 Cranch) 1, 43 (1801). This doctrine has been consistently and recently reaffirmed by this Court. *See, e.g.*, *Hamdan v. Rumsfeld*, 548 U.S. 557, 561-63 (2006); *F. Hoffmann-La Roche Ltd. v. Empagran S.A.,* 542 U.S. 155, 164 (2004); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432-41 (1987).

This principle applies with the same force to judicial interpretations of the U.S. Constitution, because the same arguments that justify the *Charming Betsy* doctrine apply in the constitutional context. Just as Congress cannot be presumed to intend to violate international law without a clear showing, *Murray,* 6 U.S. at 118, there is no reason to believe that the Framers of the Constitution intended to violate international law in drafting its text. States are not merely creatures of popular will;

---

executing may provide evidence of customary international law, making it independently operative in U.S. courts. *Filartiga v. Pena-Irala*, 630 F.2d 876, 882 n.9 (2d Cir. 1980); *cf. Sosa v. Alvarez-Machain*, 542 U.S. at 738 n.29 (a rule based on aspirational principles that is far from full realization is evidence against its status as binding law, the corollary of which is that recognized rules of international law are indeed binding on U.S. courts). "[M]any judges at different levels, have evaded the self-executing treaty doctrine and complied with international human rights law by resorting to other international law sources". Sara Robles Rivera, Time for the United States to Start Complying with Human Rights Treaties: On the Self-Executing Treaty Doctrine as to Human Rights Violations, 54 Rev. Jur. UIPR 111, 132 (2020).

they exist through a community of mutual recognition by operation of international law, and the Founding Generation understood international law to form part of the received common law and the Constitution was therefore drafted with international law as a set of background norms.

Accordingly, this Court should interpret U.S. law, including the Constitution, in a manner consistent with fundamental U.S. obligations under binding treaties and customary international law.[3] These include several treaties and rules of customary international law directly applicable to the dispute in this case. Most prominently, the United States is bound by the International Covenant on Civil and Political Rights, Treaty Doc. 95-20, 95th Cong. (Apr. 2, 1992) (ICCPR) and the International Convention on the Elimination of All Forms of Discrimination Based on Race, Treaty Doc. 95-18, 95th Con. (June 24, 1994) (CERD).

## II.  The United States is obliged by international human rights law to protect the rights of non-binary persons and to affirm their Rights to Self-Identification, bodily autonomy, equality and legal gender recognition

Gender identity constitutes a fundamental aspect of personal autonomy and self-determination, essential to individual dignity and inherent freedom. International law and standards have evolved to recognize legal gender recognition as a human right, and recent developments have moved towards gender recognition

---

[3] Robles Rivera, *supra* note 2, at 132-34 (describing examples of US courts applying international human rights norms).

procedures based on self-determination. Although not legally binding, the Yogyakarta Principles and Yogyakarta Principles plus 10, which were developed in 2006 and 2017, respectively, by lawyers, scholars, NGO representatives and other experts, are a crystallization of existing international human rights law as it pertains to gender identity and expression and serve as a model for understanding how existing international human rights law applies to LGBTQ+ issues.[4] The Yogyakarta Principles affirm the right to legal recognition based on a person's understanding of their gender identity, including access to identity documents that reflect one's gender.

### A. Right to Equality and Non-Discrimination

The right to equality and non-discrimination are core principles of human rights, enshrined in a wide range of human rights treaties, including the United Nations Charter and the Universal Declaration of Human Rights. The opening words of the UDHR are unequivocal: "All human beings are born free and equal in dignity and rights."[5] The International Covenant on Civil and Political Rights, provides all

---

[4] Yogyakarta Principles, *Principles on the application of international human rights law in relation to sexual orientation and gender identity*. (2006) Geneva; Yogyakarta Principles plus 10, *Additional Principles and State Obligations on the Application of International Human Rights Law in Relation to Sexual Orientation, Gender Identity, Gender Expression and Sex Characteristics to Complement the Yogyakarta Principles*. (2017) Geneva. http://www.yogyakartaprinciples.org.
[5] United Nations. *Universal Declaration of Human Rights*. (1948) art. 1. https://www.un.org/en/about-us/universal-declaration-of-human-rights

people guarantees of equal and effective protection "against discrimination on any ground such as race, colour, sex, language, religion, political or other opinion, national or social origin, property, birth or other status.[6] Gender expression should equally be considered as a protected ground, included in open-ended lists of grounds of discrimination in human rights treaties such as Articles 2 and 26 the International Covenant on Civil and Political Rights.[7]

United Nations human rights treaty bodies have repeatedly confirmed that the guarantee of equality includes a prohibition on discrimination on the grounds of gender identity and g. For example, the United Nations Committee on Economic, Social and Cultural Rights (CESCR) has emphasized that: "Gender identity is recognized as among the prohibited grounds of discrimination; for example, persons who are transgender, transsexual or intersex often face serious human rights violations, such as harassment in schools or in the workplace."[8] The United Nations Committee on the Elimination of Discrimination against Women has stated: "The discrimination of women based on sex and gender is inextricably linked with other

---

[6] United Nations. *International Covenant on Civil and Political Rights*, (Dec. 16, 1966) 999 U.N.T.S. 171, art. 26.

[7] *Id.*

[8] Committee on Economic, Social and Cultural Rights United Nations, *General Comment No. 20: Non-discrimination in Economic, Social and Cultural Rights*. U.N. Doc. GE.09-43405 (E) 090709 (Jul., 2 2009), ¶ 32.

factors that affect women, such as race, ethnicity, religion or belief, health, status, age, class, caste and sexual orientation and gender identity."[9]

In his biannual reports to the Human Rights Council and UN General Assembly, the UN Independent Expert on Sexual Orientation and Gender Identity has emphasized there is a well-established framework prescribing respect for gender identity in international law and emphasized that United Nations Treaty Bodies have affirmed that gender identity, including gender expression, are prohibited grounds for discrimination.[10]

### B. The right to gender self-determination and autonomous control over one's body

Principle 19 of the Yogyakarta Principles guarantees everyone the right to freedom of opinion and expression, which includes "the expression of identity or personhood through speech, deportment, dress, bodily characteristics, choice of name, or any other means, as well as the freedom to seek, receive and impart

---

[9] Committee on the Elimination of Discrimination against Women, *General Recommendation No. 28: The Core Obligations of States Parties under Article 2 of the Convention on the Elimination of All Forms of Discrimination against Women*, U.N. Doc. CEDAW/C/GC/28 (Dec. 16, 2010), ⁋ 18.

[10] United Nations, *Report of the Independent Expert on protection against violence and discrimination based on sexual orientation and gender identity, 'Protection against violence and discrimination based on sexual orientation and gender identity'* (Jul. 12, 2018) UN Doc No. A/73/152, ⁋ 17.

information and ideas of all kinds, including with regard to human rights, sexual orientation and gender identity, through any medium and regardless of frontiers."[11]

Further, in terms of self-determination, Principle 31 of the Yogyakarta Principles Plus 10 makes it clear that the right to legal recognition includes the obligation of the state to "Ensure access to a quick, transparent and accessible mechanism to change names, including to gender-neutral names, based on the self-determination of the person."[12] Further, Principle 32 mandates states to "guarantee and protect the rights of everyone, including all children, to **bodily and mental integrity, autonomy and self-determination**." (Emphasis added).[13]

The Inter-American Court of Human Rights explained that the American Convention protects the "right of each person to define his or her sexual and gender identity autonomously and that the personal information in records and on identity documents should correspond to and coincide with their self-defined identity."[14]

The opinion affirms that "States must respect and ensure to everyone the possibility of registering and/or changing, rectifying or amending their name and the other essential components of their identity such as the image, or the reference to

---

[11] Yogyakarta Principles; Principle 19, *supra,* note 4.
[12] Yogyakarta Principles Plus 10; Principle 31, *supra,* note 4.
[13] Yogyakarta Principles Plus 10; Principle 32, *supra,* note 4.
[14] Inter-American Court of Human Rights, Gender identity, and equality and non-discrimination of same-sex couples, Advisory Opinion OC-24/17, Series A No. 24 (Nov. 24, 2017), ⸿ 115.

sex or gender, without interference by the public authorities or by third parties. This necessarily means that those who identify themselves with diverse gender identities must be recognized as such. Moreover, the State must ensure that they can exercise their rights and contract obligations based on that same identity, without being obliged to purport another identity that does not represent their individuality, especially so when this involves a continuous exposure to the social questioning of that same identity, thus affecting the exercise and enjoyment of the rights recognized by domestic and international law."[15]

In 2016, the UN Office of the High Commissioner for Human Rights similarly called for legal gender recognition free of abusive requirements but based on self-determination. In particular, it called for such procedures to be based on self-identification, allow for recognition of non-binary identities, and be a simple administrative process, among other requirements.[16]

### C. Right to Legal Gender Recognition

Principle 31 of the Yogyakarta Principles Plus 10, makes clear that, "Everyone has the right to legal recognition without reference to, or requiring assignment or disclosure of, sex, gender, sexual orientation, gender identity, gender

---

[15] *Id.*

[16] Office of the United Nations High Commissioner for Human Rights, 2016, *Living Free and Equal*, pp. 94-96. *See also Report of the Independent Expert on protection against violence and discrimination based on sexual orientation and gender identity*, *supra,* note 10.

expression or sex characteristics. Everyone has the right to obtain identity documents, including birth certificates, regardless of sexual orientation, gender identity, gender expression or sex characteristics. Everyone has the right to change gendered information in such documents while gendered information is included in them."[17]

In discussing the obligations of legal gender recognition, a report by the African Commission, Inter-American Commission on Human Rights, and the UN human rights mechanism explained that "Each person's self-defined gender identity is integral to their personality and is one of the most basic aspects of self-determination, dignity and freedom."[18]

In line with this, the Independent Expert on Protection against Violence and Discrimination based on Sexual Orientation and Gender Identity has explained that the lack of legal recognition negates the identity of the concerned persons to such an

---

[17] *See* Yogyakarta Principles Plus 10, *supra* note 4.

[18] African Commission on Human and Peoples' Rights, Inter-American Commission on Human Rights, United Nations & University of Pretoria (eds), *Ending Violence and Other Human Rights Violations Based on Sexual Orientation and Gender Identity: A Joint Dialogue of the African Commission on Human and People's Rights, Inter-American Commission on Human Rights and United Nations'* (2016), Annex 6: Norms, case law and practices relevant to sexual orientation, gender identity and intersex status in the United Nations system, p. 70, as cited in the report.

extent that it provokes what can be described as a fundamental rupture of State obligations.[19]

The Independent Expert on Protection against Violence and Discrimination based on Sexual Orientation and Gender Identity has further reiterated that gender-diverse persons whose identity is not adequately recognized suffer denial and violations of the right to health; discrimination, exclusion and bullying in accessing education contexts; discrimination in employment, housing and access to social security; violations of the rights of the child; and arbitrary restrictions on the rights to freedom of expression, peaceful assembly and association, the right to freedom of movement and residence, and the right to leave any country including one 's own.[20]

Similarly, Amnesty International's global research confirms that legal recognition of gender identity is an indispensable human right, and that denying accurate legal documents constitutes structural discrimination. The consequences are severe, including pervasive barriers to employment, education, healthcare, and housing, all essential human rights. In the qualitative study *Being Not Binary: Experiences and Functions of Gender and Gender Communities,* Levitt, H.M., Kehoe, K.A., Day, L.C. et al., examined the experiences among people who identify

---

[19] *Report of the Independent Expert to the United Nations General Assembly on protection against violence and discrimination based on sexual orientation and gender identity, supra,* note 10.
[20] *Id.*

as nonbinary. The findings revealed nonbinary individuals face politicization of identity, systemic exclusion, and benefit from affirming documentation.[21]

The District Court's finding that the policy violates the Equal Protection Clause is therefore consistent with the international imperative to eliminate structural discrimination based on gender identity, ensuring that all people, regardless of identity, are afforded equality before the law.

Article 22 of the UDHR also affirms everybody's right to: "economic, social and cultural rights indispensable for his dignity and the free development of his personality".[22] Additionally, Principle 3 of the Yogyakarta Principles stipulates that self-defined sexual orientation and gender identity of each individual is integral to their personality and is one of the most basic aspects of self-determination, dignity and freedom.[23] Principle 32 of Yogyakarta Principles Plus 10 explicitly spells out that everyone shall enjoy the right to bodily and mental integrity, autonomy and self-determination regardless of their sexual orientation, gender identity, gender expression or sex characteristics.[24]

## III.    Comparative state practice and law

---

[21] Levitt, H.M., Kehoe, K.A., Day, L.C. et al. *Being Not Binary: Experiences and Functions of Gender and Gender Communities*. Sex Roles 90, 1766–1786 (2024).
[22] United Nations.  Universal Declaration of Human Rights, *supra,* note 5.
[23] Yogyakarta Principles, Principle 3, *supra* note 4.
[24] Yogyakarta Principles Plus 10, Principle 32, *supra* note 4.

Amnesty International has observed States seeking to fulfil their international human rights law obligations to ensure non-discrimination and uphold human dignity and the right to self-determination by enacting legislative and other policy measures to ensure individuals' gender identity aligns with their official documents such as passports and birth certificates.

For example, in 2007 the Supreme Court of Nepal issued a decision mandating that the government abolish all laws that discriminated based on gender identity given that "as the people with a third type of gender identity other than male and female....are also Nepali citizens, they should be allowed to enjoy [their] rights with their own identity as provided for by national law, the Constitution, and international human rights instruments." [25] The Court recognized that "It is the responsibility of the state to provide the documents including the birth certificate, citizenship certificate, passport, voter-identity card, etc., specifying the sex as per their interest to the people of gender minorities to make them free from the practice of gender discrimination."[26] Nepalese official documents such as passports afford citizens three gender options: male, female, and "others" which includes those who are nonbinary.

---

[25] *Sunil Babu Pant and Others v Nepal Government and Others*, Supreme Court of Nepal, (2008) 2 NJA L.J. 261-286.
[26] *Id.*

14

Australia has offered an "X" gender marker for non-binary individuals since it updated its passport guidelines in 2011. The Australian Government Guidelines on the Recognition of Sex and Gender specify that "The X category refers to any person who does not exclusively identify as either male or female, i.e. a person of a non-binary gender. People who fall into this category may use a variety of terms to self-identify."[27]

Since 2012, New Zealand has enabled citizens' legal documents to reflect their gender with the sole criterion being a person's self-defined gender identity: this includes the option to have an 'X' rather that 'Male' or 'Female' on their passport.

India, since the 2014 Supreme Court ruling of *National Legal Services Authority v. Union of India and others,* 5 SCC 438 (2014), has enabled individuals' passports to offer three gender markers: M, F, and O, with the "O" covering nonbinary and intersex people.

Canada's Gender Identity and The Human Rights Act, established by Bill C-16 in 2017 prohibits discrimination based on gender identity and expression at the federal level. It also allows its citizens to choose a gender-neutral "X" marker on their passports through self-identification.[28]

---

[27] Australian Government Guidelines on the Recognition of Sex and Gender. 2013.https://www.ag.gov.au/sites/default/files/2020-03/AustralianGovernmentGuidelinesontheRecognitionofSexandGender.pdf
[28] Gender Identity and The Human Rights Act, Bill C-16 (2017) Canada.

In 2019 Iceland passed the Gender Autonomy Act No 80/2019 which has been amended by Act 159/2019, NO 152/2020 and No. 154/2020. The Act, which adopts a self-determination model, allows the state to amend a person's gender in the Official Registry in accordance with their own experience. Passports allow for nonbinary gender identification with an "X" marker for those over the age of 15.

In 2021, Argentina enabled by decree the Gender Identity Law which permits the option to add an "X" marker on national identity documents such as passports, upholding the right to self-identification of nonbinary persons.[29]

Colombia began issuing passports with an "X" gender marker for non-binary citizens in 2023 following the 2022 ruling from the Constitutional Court of Colombia which asserted that nonbinary people should have the right to use a "*no binario*" (non-binary) maker instead of "male" or female" on their official documentation.

In 2024, the Self-Determination Act (*Gesetz über die Selbstbestimmung in Bezug auf den Geschlechtseintrag)* came into force in Germany that permits non-binary people with German Citizenship  or whose habitual residence is in Germany to get their gender entry and forenames changed in the civil status records and to be issued with a passport with their gender as either M, F, or X, according to their gender identity.

---

[29] Registro Nacional de las Personas, Decreto 476/2021, Argentina.

## CONCLUSION

Amnesty International Puerto Rico respectfully urges this Court to affirm the District Court's decision. The inclusion of a nonbinary gender marker on birth certificates is a necessary step toward ensuring equal protection, dignity, and human rights for all individuals, regardless of gender identity and therefore enables the United States to comply with its international human rights obligations.

Respectfully submitted,

Dated: November 14, 2025.

JESSICA E. MÉNDEZ-COLBERG
*Counsel of Record*

*/s/ Jessica E. Méndez-Colberg*
JESSICA E. MÉNDEZ-COLBERG
CELFI, LLC
P.O. Box 8008
Ponce, P.R. 00732
(787) 962-5918
jessica.mendez@celfipr.com

*Counsel for Amnesty
International Puerto Rico
Section, Inc.*
.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations set forth in Fed. R. App. P. 29(a)(5). This brief contains 3,756 words, including all headings, footnotes, and quotations, and excluding the parts of the response exempted under Fed. R. App. P. 32(f). I certify that this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Garamond font.

Dated: November 14, 2025

*/s/ Jessica E. Méndez-Colberg*
JESSICA E. MÉNDEZ-COLBERG
*Counsel for Amnesty International Puerto Rico Section, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2025, I electronically filed the foregoing

document with the Clerk of the Court for the United States Court of Appeals for the

First Circuit by using the CM/ECF system, which will accomplish service on counsel

for all parties through the Court's electronic filing system.


Dated: November 14, 2025

*/s/ Jessica E. Méndez-Colberg*
JESSICA E. MÉNDEZ-COLBERG
*Counsel for Amnesty International Puerto Rico Section, Inc.*